30 A.3d 220

Wycinna L. SPENCE et vir.

v.

Emerson R. JULIAN, Jr. et al.

Emerson R. Julian, Jr. et al.

v.

Mercy Medical Center, Inc. et al.

Nos. 2764, Sept. Term, 2009, 1511, Sept. Term, 2010.

Court of Special Appeals of Maryland.

Oct. 26, 2011.

564

Rignal W. Baldwin (Jeffrey P. Bowman, Baldwin, Kagan & Gormley LLC, on the brief), Annapolis, MD, for Appellant.

Michelle R. Mitchell (David A. Levin, Michael K. Wiggins, Wharton, Levin, Ehrmantraut & Klein, on the brief), Annapolis, MD, for Appellee.

Panel: JAMES R. EYLER, GRAEFF and CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

GRAEFF, J.

This appeal arises from a medical malpractice action. The issue presented involves the effect of a release agreement pursuant to the Maryland Uniform Contribution Among Joint Tort–Feasors Act (the "UCATA"), Md.Code (2006 Repl.Vol.) § 3–1401 to –1408 of the Courts and Judicial Proceedings Article ("C.J.P."). The Circuit Court for Baltimore City, in two separate opinions, reached conflicting conclusions.

The initial lawsuit (the "Primary Action") was filed in February 2005. Appellants, Wycinna and Christopher Spence, individually, and Ms. Spence, as the Personal Representative of the Estate of Caleb Spence (the "Spences"), filed suit against Emerson R. Julian Jr., M.D., Emerson R. Julian,

Jr., M.D., P.A., and Harbor City OB/GYN (collectively "Dr. Julian") and Mercy Medical Center and its employees ("Mercy") for injuries sustained by their son, Caleb Spence, prior to and during his birth. Before trial, Mercy and the Spences entered into a Confidential Settlement Release Agreement (the "Release Agreement"), which provided that no other person would be entitled to a reduction of damages by reason of the settlement "unless and until" Mercy was "adjudicated to be [a] Joint Tortfeasor" with the other person. The Spences' claim proceeded to trial solely against Dr. Julian, and a jury found him liable for Caleb's injuries. The jury awarded damages in excess of $8 million; the award subsequently was reduced to $2,186.342.50, and Dr. Julian paid the full amount.

On April 17, 2009, the Spences filed a Complaint for Declaratory Judgment and Injunctive Relief. They asked the circuit court to declare that Dr. Julian was "barred from any right of contribution" from Mercy.

On June 15, 2009, Dr. Julian filed a claim against Mercy, asserting that Mercy was liable to him for contribution as a joint tortfeasor. Mercy moved to dismiss the claim, arguing that the Release Agreement it signed with the Spences in the original malpractice case precluded Dr. Julian from seeking contribution from Mercy.

Both cases were heard in the Circuit Court for Baltimore City, but the hearings took place before different judges. On November 25, 2009, in the declaratory judgment action, the court found that Dr. Julian had the right to file a claim for contribution against Mercy. On August 27, 2010, a different judge dismissed Dr. Julian's contribution claim against Mercy, finding that, pursuant to the Release Agreement, Mercy was relieved from liability to make contribution to Dr. Julian.

The Spences noted an appeal from the judgment of the circuit court in the declaratory judgment action. Dr. Julian appealed the court's order dismissing his complaint seeking contribution. The two cases were consolidated for appeal.

The parties present multiple questions for our review,[1] which we have consolidated and rephrased as follows:

Where a plaintiff enters into a settlement agreement with one defendant, pursuant to a release that provides that no other person is entitled to a reduction of damages by reason of the settlement unless the settling defendant is adjudicated a joint tort-feasor, does the nonsettling defendant have a right to pursue a claim for contribution in a separate proceeding filed after the conclusion of the underlying case?

For the reasons set forth below, we answer that question in the affirmative. Accordingly, we shall affirm the circuit court's order in the declaratory judgment action and reverse the judgment dismissing Dr. Julian's contribution claim against Mercy.

## FACTUAL AND PROCEDURAL BACKGROUND

### a. The Release Agreement and Primary Action

On February 15, 2005, the Spences filed a medical malpractice claim against Mercy and Dr. Julian. They alleged negli-

---

1. The Spences present the following questions:

    1. Did the lower court err in holding that section 3-1405 of [the Uniform Contribution Among Joint Tortfeasors Act (the "UCATA")] does not bar appellees/cross-appellants' right to obtain contribution from Mercy?
    2. Did the lower court err in determining that appellees/cross-appellants did not waive their right to contribution by failing to raise an affirmative defense of release and failing to prove negligence by Mercy in the medical malpractice action?
    3. Did the lower court err in determining that appellees/cross-appellants did not waive their right to contribution under the doctrine of res judicata?
    4. Did the lower court err in determining that appellees/cross-appellants did not waive their right to contribution under the doctrine of judicial estoppel?

    Dr. Julian presents the following questions for our review:

    1. Whether the lower court properly issued a declaratory judgment affirming that Dr. Julian's contribution claim against Mercy was not barred under Maryland law.
    2. Whether the lower court erred in dismissing Dr. Julian's contribution claim against Mercy, ruling that it was barred under Maryland law, in direct contradiction to the Declaratory Judgment previously issued.

gence, wrongful death, and lack of informed consent in the labor and delivery of their son, Caleb, who suffered brain damage and died within one year.

On September 20, 2006, prior to trial, the Spences settled their claim against Mercy and entered into the Release Agreement. The Release Agreement discharged Mercy from all claims as a result of the Occurrence.[2] It addressed the effect of the settlement on any award of damages the Spences might recover against Dr. Julian as follows:

7. *Joint–Tortfeasor Nature of Agreement:*

a. The [Spences] and the Released Parties agree and understand that this is a *"Swigert* Release" as set out in the case of *Swigert v. Welk,* 213 Md. 613 [133 A.2d 428] (1957), and, in accordance with that decision and the Maryland Uniform Contribution Among Joint Tort–Feasors Act, [C.J.P.] § 3–1401 et seq. (1974, 2002 Repl.Vol.) ("the Act") the Released Parties are neither deemed joint tortfeasors for purposes of this Release, nor are [the Spences] hereby releasing any other person or entity, whether or not a named party to this agreement. Any person or entity, other than the Released Parties, whom the [Spences] claim are liable to them for injuries, losses and damages which are the subject of this action shall not be entitled to any reduction of the damages the [Spences] are claiming against them by reason of the payment herein, unless and until the Released Parties have been adjudicated to be Joint Tortfeasors with said other person or entity. In the event the Released Parties are adjudicated to be Joint Tortfeasors liable to the [Spences] for damages, the [Spences] agree that their damages recoverable against all other tort-feasors, including but not limited to [Dr. Julian], will be reduced to the extent of the *pro rata* share of the Released Parties pursuant to the Maryland Uniform Contribution Among Joint Tort–Feasors Act, [C.J.P.] § 3–1405 (1974, 2002 Repl.Vol., 2005 Supp.). This provision is further in-

---

**2.** The "Occurrence" refers to Caleb's birth and the injuries that ensued.

tended to relieve and protect the Released Parties from any liability for contribution to any person, firm, partnership or corporation.[3]

The release contained a provision for an escrow account to be maintained if the Spences obtained a judgment against Dr. Julian. It provided:

[The Spences] shall hold in escrow one half of the amount of such judgment (upon receipt of payment) in an interest bearing account. The escrowed funds are intended as security for the benefit of the Released Parties for any future indemnity payments that the [Spences] are obligated to pay to the Released Parties under this Release Agreement. Said funds shall be escrowed for three years from the date of the judgment or until [Dr. Julian's] claim for contribution has been extinguished.

The Release Agreement also contained an indemnity and hold harmless clause. It provided that the Spences would indemnify Mercy for any claims against it arising out of the Occurrence. The Release Agreement specifically stated that its purpose was

to limit forever the amount of money to be paid by the Released Parties in conjunction with the Occurrence.... to relieve the Released Parties from any liability to make contribution to or indemnify [Dr. Julian], or any other person or entity, in the event that the Released Parties are found to be tort-feasors liable for damages pursuant to the finding of any court of law.

Following the execution of the Release Agreement, the Spences filed a Stipulation of Voluntary Dismissal. It dismissed the "Complaint, and each and every Count therein, asserted against Defendant [Mercy], only," with prejudice.

---

3. The Release Agreement provided that "[t]he agreement to indemnify the Released Parties does not include payment of attorneys' fees and costs (*e.g.,* expenses, travel expenses, exhibits, court costs, photocopying costs, expert witness fees, etc.)."

Prior to trial, Dr. Julian moved to compel production of the Release Agreement, stating that he needed to review it to determine how to protect his claims against Mercy as a joint tortfeasor. Specifically, he stated:

[Pursuant to C.J.P. § 3–1404] a joint tort-feasor release permits Dr. Julian to reduce a judgment, if any, in this case by the greater of the amount of consideration paid by Mercy Medical Center, or the *pro-rata* share. If, however, the Release is not a joint tort-feasor Release, but rather, a *Swigert* Release, then Dr. Julian must know to decide whether or not to bring a contribution action against Mercy Medical Center by third-party claim or in a separate action. Dr. Julian would need to present evidence to the Court and jury as to whether the hospital is a joint tort-feasor under Maryland law to permit him the option of set-off. Judicial economy may dictate that the same jury that decides the liability, if any of Dr. Julian, also determine from the facts presented whether or not Dr. Julian and Mercy Medical Center are true joint tortfeasors with respect to the plaintiffs' alleged injuries.

Dr. Julian is entitled to know whether or not the Release between the plaintiffs and Mercy Medical Center gives rise to claims for contribution or results in automatic set-off. Dr. Julian is entitled to know the amount of the Release and Settlement to enable him to determine the extent of the set-off against him. If Dr. Julian learns that he must pursue a separate claim against Mercy Medical Center, then he will require the document in order to file an Amended Answer pursuant to Rule 2–323 of the Maryland Rules to assert the affirmative defense of Release.

In a letter dated October 6, 2006, counsel for Dr. Julian requested that the attorneys representing Mercy and the Spences withdraw the Stipulation of Voluntary Dismissal. Counsel for Dr. Julian stated: "Because it is my understanding that Mercy Medical Center has entered into a [*Swigert* ]-type release in this case, I cannot agree to the dismissal of the

claims against Mercy Medical Center." Ultimately, however, Mercy was dismissed from the case.[4]

The trial proceeded solely against Dr. Julian. The jury found Dr. Julian liable and awarded the Spences more than $8,000,000; the award subsequently was reduced to $2,186,342.50. On appeal, we affirmed the judgment in an unreported opinion, *Emerson R. Julian, Jr. v. Christopher Spence*, No. 1466, Sept. Term 2007 (filed Dec. 23, 2008). On April 10, 2009, the Court of Appeals denied Dr. Julian's petition for writ of certiorari. *Julian v. Spence*, 408 Md. 150, 968 A.2d 1065 (2009). The next month, Dr. Julian's insurance company paid the judgment against him in full.

### b. Declaratory Judgment Action

On April 17, 2009, the Spences filed a complaint in the Circuit Court for Baltimore City seeking declaratory and injunctive relief against Dr. Julian, who had informed them that he intended to pursue a contribution action against Mercy.[5] The Spences requested that the court "[d]etermine and adjudicate the rights and liabilities of the parties with respect to the *Swigert* Release," including Dr. Julian's "failure to plead and prove negligence on the part of" Mercy and his "failure to affirmatively plead 'Release' in conformance with Maryland Rule 2–323." They asked the court to declare that Dr. Julian was "barred from any right of contribution," and he had "a duty to pay the full amount of the $2,186,342.50."

---

4. We do not have the record for the Primary Action, and there is limited information in the record before this Court regarding the proceedings in the Primary Action, particularly those associated with the Mercy's dismissal. According to the proceedings in the circuit court, however, Dr. Julian ultimately did not object to Mercy's dismissal. At oral argument, counsel for Dr. Julian stated that he chose not to pursue his contribution claim in the Primary Action. As indicated, *infra*, Dr. Julian's actions or inactions regarding the dismissal of Mercy as a party are not dispositive to our resolution of the issue on appeal.

5. As indicated, pursuant to the Release Agreement, the Spences agreed to indemnify Mercy in the event Dr. Julian successfully pursued a contribution claim against it, and they agreed to hold in escrow one half of the amount of the judgment for three years or until Dr. Julian's claim for contribution had been extinguished.

On June 15, 2009, Dr. Julian filed a Motion to Dismiss and Motion for Sanctions. He argued that: (1) the Spences lacked standing to pursue declaratory relief; (2) "declaratory judgment actions are inappropriate when the issue can be resolved in a pending tort action"; and (3) the Spences "failed to state a claim upon which relief may be granted," because "the 'relief' sought . . . is contrary to Maryland law." Dr. Julian noted that he had filed a contribution action in the Health Claims Alternative Dispute Resolution Office ("HCADRO"), and he argued that the Spences' complaint should be addressed in that forum. He cited C.J.P. § 3–1402 for the proposition that the appropriate statutory remedy was not a declaratory judgment, but rather, the Spences should raise the Release Agreement as a defense to his contribution action. Dr. Julian asserted that his contribution action against Mercy was not waived "by a failure to file a cross-claim in the underlying action" or "by a failure to affirmatively plead 'release' in the primary malpractice action." Dr. Julian characterized the Spences' complaint as "meritless" and without substantial justification, and he requested that the court award him attorney's fees and costs.

On July 13, 2009, the Spences filed their opposition to Dr. Julian's motion. They argued that declaratory relief was appropriate because it "may terminate all further controversy related" to the case, thereby fulfilling the purpose of the declaratory judgment statute. Noting that they were not a party in the HCADRO proceeding, which was initiated two months after they had filed their complaint for declaratory judgment, the Spences maintained that "[d]eclaratory relief is particularly appropriate, if not essential, when the interests of a party in one case might not be properly or completely represented by a separate party in another case." They asserted that they had "no statutory rights or other means" to protect their rights. The Spences insisted that, pursuant to *Swigert*, 213 Md. at 613, 133 A.2d 428, the Release Agreement insulated Mercy from any claim for contribution. They further argued that the doctrine of *res judicata* prevented Dr. Julian from filing a contribution suit against Mercy because he

"failed to plead or prove any negligence on the part of Mercy and/or its employees" in the Primary Action, and he waived the defense of release because he failed to timely plead it as an affirmative defense in the Primary Action. The Spences also maintained that Dr. Julian's motion for sanctions was "neither substantive or thoughtful," and they urged the court to deny the motion.

On July 28, 2009, Dr. Julian filed a reply. He maintained that "[d]ismissal of the declaratory judgment action is mandated given that the parties may adjudicate the identical issues in the pending HCADRO contribution action," arguing that the Spences were, in fact, parties in the HCADRO proceedings because they were contractually bound to indemnify Mercy. In that regard, he asserted that the Spences could not assert standing in the declaratory judgment proceeding as "Use Plaintiffs" and then deny involvement in the HCADRO action. Dr. Julian argued that there was no justiciable controversy because he had not yet pursued a contribution claim against Mercy.

On August 7, 2009, the Honorable Lynn K. Stewart held a hearing on Dr. Julian's Motion to Dismiss. Counsel for Dr. Julian argued that the court should dismiss the declaratory judgment action because there was another proceeding pending on the issue involved. She further argued that the relief the Spences were requesting was not available, stating that Dr. Julian had a statutory right to contribution, was not obligated to file a cross-claim in the Primary Action to establish Mercy's liability as a joint tortfeasor, and "there [is] no case law, whatsoever, that suggests that" a nonsettling defendant must "plea[d] release in the underlying malpractice case before [it] can pursue [contribution] in a subsequent action."

The Spences responded in two ways. First, they asserted that the HCADRO proceedings did not render the Spences' declaratory judgment motion improper because the proceedings involved different claims and different parties—the HCADRO proceedings involved a medical negligence claim that Dr. Julian had initiated against Mercy, whereas the declaratory

judgment proceedings involved the Spences' request that the court determine Dr. Julian's right to contribution. Counsel maintained that the claims were "separate and distinct" and declaratory relief is disfavored only when parallel proceedings involve identical parties and identical issues. Second, counsel argued that Dr. Julian waived his right to pursue a contribution claim because he did not plead release as an affirmative defense or implead Mercy to establish its status as a joint tortfeasor in the Primary Action.

The court issued its ruling from the bench, denying Dr. Julian's Motion to Dismiss and Motion for Sanctions. The court found that the matters pending before it and in the HCADRO proceedings were "not even the same," noting that they involved "different parties, different issues, [and] different claims." It observed that Mercy's status as a joint tortfeasor had not been established, and Dr. Julian "did not really protect [him]self in a way that [he] should have or that it appeared that he was going to in reference to amending . . . [his] Answer . . . for the affirmative defense of release or to file a cross claim or a cross interpleader." The court stated that the Spences' had a "valid declaratory relief action," and it denied Dr. Julian's Motion to Dismiss.

On August 21, 2009, Dr. Julian filed his answer to the Spences' complaint. He alleged a number of defenses, including that the Spences' claim was barred by C.J.P. § 3–409(b), which prohibits declaratory relief when "a statute provides a special form of remedy for a specific type of case." Dr. Julian also maintained that, if the court granted the declaratory relief requested by the Spences, he would "be entitled to a credit or setoff for the amount of the settlement with Mercy Medical Center."

On August 27, 2009, Dr. Julian filed a Motion for Summary Judgment, arguing that there was no dispute of material fact and that he was entitled to judgment as a matter of law. In this motion, and his reply to the Spences' opposition, he maintained that "a contribution action *is the statutorily proscribed [sic] method* by which [Dr. Julian] must establish the

tortfeasor status of Mercy," and "there is no requirement under Maryland law that [Dr. Julian] must adduce evidence of negligence of a party during the underlying malpractice action in order to preserve the right to pursue a contribution claim against that party in a subsequent action." He argued that "there is no obligation in Maryland to affirmatively plead 'Release'" or "to file a cross-claim in the underlying malpractice action in order to preserve the ability to seek contribution."

The Spences filed an opposition to Dr. Julian's Motion for Summary Judgment, as well as their own motion for summary judgment. They maintained that they were entitled to judgment as a matter of law, arguing: (1) Dr. Julian waived his contribution claim because he "did not affirmatively plead 'Release' pursuant to Maryland Rule 2–323"; and (2) Dr. Julian failed to preserve a contribution claim because he did not plead or prove Mercy's negligence in the Primary Action, which was required to obtain contribution under the UCATA. The Spences asserted that Dr. Julian's "assumption that [he] could prove negligence in a subsequent claim and ignore the intervening requirement to introduce evidence of joint tortfeasor negligence in the underlying claim" was fatal to his ability to recovery under the UCATA.

On November 19, 2009, after a hearing, the Honorable Evelyn O. Cannon stated that she was "going to issue declaratory judgment that [Dr. Julian's] action may go forward." The court stated that there was no requirement in Maryland that a claim for contribution be made in the underlying action by a cross-claim or third-party claim, and therefore, Dr. Julian was not barred from pursuing a contribution claim against Mercy at that point.

On November 25, 2009, the circuit court issued its declaratory judgment order in Dr. Julian's favor. It provided:

[Dr. Julian] ha[s] not waived any right to assert a claim for setoff or contribution against Mercy Medical Center in connection with the judgment against [Dr. Julian] in *Wycinna Spence, et al. v. Emerson Julian, et. al.,* Circuit Court

for Baltimore City, Case no. 24–C–05–1852. [Dr. Julian's] decision not to file a cross-claim or plead "release" did not waive their right to file a claim or setoff or contribution and the claim is not barred by [C.J.P.] § 3–1405 or res judicata. There has not been a judicial finding [that] Mercy Medical Center was or was not a joint tortfeasor.

The Spences timely filed a Notice of Appeal.

### c. Dr. Julian's Contribution Claim

On June 15, 2009, Dr. Julian filed a claim in the HCADRO, seeking contribution from Mercy for the damages award it paid as a result of the verdict in the Primary Action. On August 13, 2009, the HCADRO transferred the case to the circuit court.

On September 23, 2009, Dr. Julian filed a Complaint against Mercy and two nurses, Justina Mammeri and Tina Call (the "nurses"),[6] in the Circuit Court for Baltimore City. He alleged that Mercy and the nurses were negligent in the prenatal care and delivery of Caleb Spence. Specifically, Dr. Julian alleged that Mercy and the nurses failed "to adequately monitor and supervise the administration of Cytotec and Pitocin," which caused Caleb to "lose his oxygen reserve during labor" and "suffer a severe and ultimately fatal injury during that delivery that was prolonged." Dr. Julian maintained that, because Mercy settled with the Spences by signing a non-Joint Tortfeasor Release, he was entitled to establish Mercy's negligence and obtain an award in the amount of Mercy's pro rata share of liability via a contribution claim.

On May 12, 2010, after filing its Answer, Mercy filed a motion to dismiss or, in the alternative, for summary judgment. It relied on C.J.P. § 3–1405, which provides:

---

6. Another nurse, Rachel Breman, was also listed as a party in Dr. Julian's complaint, but she was never properly served. The claim against Ms. Breman was formally dismissed without prejudice on October 7, 2010.

A release by the injured person of one joint tort-feasor does not relieve the joint tort-feasor from liability to make contribution to another joint tort-feasor unless the release:

(1) Is given before the right of the other tort-feasor to secure a money judgment for contribution has accrued; and

(2) Provides for a reduction, to the extent of the pro rata share of the released tort-feasor, of the injured person's damages recoverable against all other tort-feasors.

Mercy stated that it had entered into a Release Agreement with the Spences "before [Dr.] Julian's right of contribution against Mercy accrued," and the Release Agreement "specifically provided for a *pro rata* reduction in favor of [Dr.] Julian in the event Mercy was adjudicated to be a joint tortfeasor liable to the Spences." Accordingly, Mercy argued, Dr. Julian's right to contribution had been extinguished under C.J.P. § 3–1405.

Mercy further asserted that it had provided Dr. Julian with a copy of the Release Agreement, but "[Dr.] Julian made no effort . . . to adjudicate Mercy and [the nurses'] alleged liability and/or joint tortfeasor status." It maintained that Dr. Julian did not "avail himself of the benefit of the *pro rata* reduction provided for in the Release" Agreement, and therefore, his claim was barred by C.J.P. § 3–1405.

On May 26, 2010, Dr. Julian filed his Opposition to Mercy's motion to dismiss and motion for summary judgment. He maintained that Mercy's claim for dismissal was barred by *res judicata*, asserting that Judge Cannon had concluded in the declaratory judgment action that, because Mercy and the Spences had entered into a non-tortfeasor *"Swigert* Release," "Dr. Julian was permitted to pursue a contribution action against Mercy" to establish Mercy's status as a joint tortfeasor. Although Mercy was not a party to the declaratory judgment proceeding, Dr. Julian maintained that it was bound by the judgment because it was in privity with the Spences by

virtue of the Spences' promise to indemnify it for claims related to Caleb's injuries.

Dr. Julian argued that C.J.P. § 3–1405 was not applicable, asserting that C.J.P. § 3–1405(2) requires a release to provide for a pro rata reduction in a nonsettling tortfeasors' liability, but in this case, the Release Agreement excluded Mercy as a joint tortfeasor and precluded Dr. Julian from obtaining a reduction in the damages award. Dr. Julian argued that he was not obligated to file a cross-complaint to adjudicate Mercy's liability in the underlying proceeding, and he did not waive his right to prove Mercy's liability in an independent contribution claim.

On June 22, 2010, Mercy filed its reply to Dr. Julian's opposition to its motion to dismiss and motion for summary judgment. It maintained that its motion to dismiss was not barred by *res judicata* because it had not had "a full and fair opportunity to litigate the application of" C.J.P. § 3–1405 in a prior proceeding because the circuit court's decision in that regard was made in response to the Spences' motion for declaratory judgment, to which it was not a party. Mercy argued that the Release Agreement complied with C.J.P. § 3–1405, which expressly "relieve[s] the joint tortfeasor from liability to make contribution to another tortfeasor." It asserted that "[Dr.] Julian had a complete opportunity to obtain the benefit of Mercy's release by filing a third party claim in the Primary Action and establishing" Mercy's status as a tortfeasor, but he waived the right for tactical reasons at trial.

On June 25, 2010, the court held a hearing on the motions. Counsel for Mercy argued that, "once Mercy obtained its release before the judgment and provided for pro rata reduction, [Dr.] Julian no longer had a right of contribution." Rather, Dr. Julian "had an opportunity to get a reduction of any verdict against him if he established Mercy to be a joint tort-feasor." He stated that, because Mercy had entered into a Release Agreement with the Spences that comported with C.J.P. § 3–1405, Julian "no longer ha[d] a right of contribution under [§ 3–]1405. What he had was a right to a setoff if he

established the tort-feasor status of [Mercy]." Counsel argued that, after Mercy settled, Dr. Julian retained the right to keep Mercy in the case to determine its liability and obtain a reduction in damages, "the only relief they are entitled to."

Counsel for Dr. Julian argued that the Release Agreement did not prevent him from pursuing a contribution action because it did not acknowledge Mercy's status as a joint tortfeasor and include an automatic pro rata reduction in any damages assessed against Dr. Julian. Counsel further argued that Dr. Julian could not have pursued a contribution action in the Primary Action because Dr. Julian's right to contribution did not accrue until payment was made on the judgment.

On August 27, 2010, the circuit court issued a Memorandum Opinion and Order. Judge John Carroll Byrnes rejected the argument that *res judicata* precluded him from finding that a contribution claim was barred, contrary to Judge Cannon's decision in the declaratory judgment action, noting that Mercy was not a party to that action. The court went on to find that, because the Release Agreement satisfied the requirements of C.J.P. § 3–1405, Mercy was relieved from liability to make contribution to Dr. Julian. The court found that Dr. Julian's contribution claim against Mercy was barred, and it granted Mercy's Motion to Dismiss.[7]

Dr. Julian timely appealed the court's order.

## DISCUSSION

The issue here is whether, when a release provides for a reduction of damages awarded against a nonsettling defendant, but only if the settling defendant is adjudicated to be a joint tortfeasor, is the nonsettling defendant required to litigate the settling defendant's joint tortfeasor status in the

---

7. The court noted, however, that neither party addressed "whether Dr. Julian may bring, not a contribution action against Mercy, but an action to determine Mercy's joint tortfeasor status that would allow him to take advantage of that which he forwent at trial: the opportunity for a pro rata reduction of the damages he, as an adjudicated tortfeasor, was made to pay the Spences."

underlying action, or does he have the option to litigate that issue in a separate contribution action. As indicated, judges in the Circuit Court for Baltimore City reached opposite conclusions on this issue. Because the rulings in these consolidated cases involve a question of law, we will review the rulings *de novo*. *See Parker v. State*, 408 Md. 428, 437, 970 A.2d 320 (2009) ("When the trial judge's ruling involves a legal question ... we review the trial court's ruling *de novo*.").

Before addressing the specific issue raised, we will address generally the right to contribution in Maryland. At common law, there was no right to contribution among joint tortfeasors. *Hashmi v. Bennett*, 416 Md. 707, 721, 7 A.3d 1059 (2010). "[A] release by the injured party of one of several joint tortfeasors released them all." *Swigert v. Welk*, 213 Md. 613, 619, 133 A.2d 428 (1957). *Accord Hollingsworth & Vose Co. v. Connor*, 136 Md.App. 91, 139, 764 A.2d 318 (2000) ("At common law, a plaintiff who settled a claim with one joint tortfeasor would lose his right to sue other joint tortfeasors on the same claim.").

The common law rule was criticized for "foisting the entire obligation on one tortfeasor," rather than distributing the common burden. *Hashmi*, 416 Md. at 721, 7 A.3d 1059. The UCATA was enacted to establish a statutory right to contribution among joint tortfeasors. *Id. Accord Parler and Wobber v. Miles and Stockbridge P.C.*, 359 Md. 671, 683, 756 A.2d 526 (2000).

The Maryland appellate courts have listed several goals of the UCATA. Initially, it "encourage[s] settlements by allowing a plaintiff to maintain his claim against a non-settling joint tort-feasor when he settles with another joint tort-feasor and signs a release." *Jacobs v. Flynn*, 131 Md.App. 342, 369, 749 A.2d 174, *cert. denied*, 359 Md. 669, 755 A.2d 1140 (2000). Moreover, it permits parties to " 'try in one action all phases of the litigation,' " *Scapa Dryer Fabrics, Inc. v. Saville*, 418 Md. 496, 529 (2011) (quoting *Porter Hayden Co. v. Bullinger*, 350 Md. 452, 473, 713 A.2d 962 (1998)), and it " 'prevent[s]

double recovery.' " *Id.* (quoting *Hollingsworth,* 136 Md.App. at 139, 764 A.2d 318).

Pursuant to the UCATA, the term joint tortfeasor is defined as: "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." C.J.P. § 3–1401. Section 3–1403 specifically abrogates the common law rule, providing: "The recovery of a judgment by the injured person against one joint tort-feasor does not discharge the other joint tort-feasor."

■ Section 3–1402 creates the right of contribution among joint tortfeasors and specifies when this right accrues. It provides:

(a) In general.—The right of contribution exists among joint tort-feasors.

(b) Discharge of liability or payment of share.—A joint tort-feasor is not entitled to a money judgment for contribution until the joint tort-feasor has by payment discharged the common liability or has paid more than a pro rata share of the common liability.

Thus, pursuant to the UCATA, a joint tortfeasor has a statutory right to seek contribution against another joint tortfeasor, but only after one joint tortfeasor has paid more than his or her share of the common liability. *See Heritage Harbour LLC v. John J. Reynolds, Inc.,* 143 Md.App. 698, 712–13, 795 A.2d 806 (2002) (right to contribution accrues at time of payment, not before); *Southern Maryland Oil Co. v. Texas Co.,* 203 F.Supp. 449, 452–53 (1962) (same).

Dr. Julian relies heavily on C.J.P. § 3–1402. He argues that his contribution action was authorized by this statute, and his claim did not accrue until payment of the judgment in May 2009.

Section 3–1402, however, cannot be read in isolation. The UCATA has additional provisions addressing the effect of a

plaintiff's settlement with some, but not all, defendants in a case.

Section 3–1404 provides:

> A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides, but it reduces the claim against the other tort-feasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

Section § 3–1405 provides a mechanism for a settling defendant to protect against a claim for contribution. It states:

> A release by the injured person of one joint tort-feasor does not relieve the joint tort-feasor from liability to make contribution to another joint tort-feasor unless the release:
>
> (1) Is given before the right of the other tort-feasor to secure a money judgment for contribution has accrued; and
>
> (2) Provides for a reduction, to the extent of the pro rata share of the released tort-feasor, of the injured person's damages recoverable against all other tort-feasors.[8]

The Court of Appeals stated in *Hashmi*, 416 Md. at 722, 7 A.3d 1059, and the parties here agree, that § 3–1405 extinguishes a nonsettling party's claim for contribution if two conditions are met. First, the release must be given before the non-released tortfeasor has accrued a right of contribution, *i.e.*, before he or she has paid more than his or her pro rata share. There is no dispute that this condition was met here; the right to contribution had not accrued at the time the Release Agreement was executed.

---

8. The term " 'pro rata share' " has been defined as " 'numerical shares or proportions based on the number of tortfeasors.' " *Chilcote v. Von Der Ahe Van Lines*, 300 Md. 106, 120, 476 A.2d 204 (1984) (quoting Wendell D. Allen, *Joint Tortfeasors; Contribution; Indemnity; and Procedure*, DAILY RECORD, June 7, 1948, at 4).

The second condition is that the release provide for a reduction of damages, to the extent of the pro rata share of a joint tortfeasor. Whether that condition was satisfied here is sharply disputed.

The Spences and Mercy maintain that the Release Agreement comports with § 3–1405 because it provided for a pro rata reduction in Dr. Julian's liability in the event that Mercy was adjudicated a joint tortfeasor. Accordingly, they maintain, Dr. Julian is barred from pursuing a contribution claim against Mercy.

Dr. Julian, in contrast, asserts that the Release Agreement does not satisfy this second element of C.J.P. § 3–1405 because the Release Agreement "explicitly and unequivocally **excluded** Mercy Medical Center as a joint tortfeasor and **precluded** Dr. Julian from obtaining a reduction in the damages award." He argues that, although the release contemplated a pro rata reduction, it was conditioned upon an adjudication of Mercy as a joint tortfeasor, which has not yet occurred. Dr. Julian insists that a release "must provide for a *pro rata* reduction in damages absent a need to adjudicate tortfeasor status" to satisfy § 3–1405(2). Because Mercy was not deemed a joint tortfeasor by the terms of the Release Agreement, Dr. Julian maintains that the Release Agreement does not satisfy the requirements of C.J.P. § 3–1405, and therefore, he is free to pursue a contribution claim against Mercy.

The Court of Appeals has discussed the reduction of a verdict pursuant to the UCATA on several occasions. In *Allgood v. Mueller*, 307 Md. 350, 355, 513 A.2d 915 (1986), the Court made clear that, "[f]or the nonsettling defendant to get the benefit of the reduction solely by operation of statutory law, the settling defendant and the nonsettling defendant must be" joint tortfeasors. Thus, in *C & K Lord, Inc. v. Carter*, 74 Md.App. 68, 74, 536 A.2d 699 (1988), where the plaintiff settled with several defendants pursuant to a release providing for a reduction in any judgment against the nonsettling defendant if the settling defendants were found to be "jointly liable," and

where the trial court subsequently granted judgment in favor of the settling defendants as a matter of law, the settling defendants were not joint tortfeasors, and the nonsettling defendant was not entitled to a reduction in the jury verdict against it.

As will be discussed, there are several ways that a party may be deemed to be a joint tortfeasor, triggering a statutory reduction. The mere act of settling a claim, however, is not sufficient; a party is not considered a joint tortfeasor merely because he enters into a settlement agreement and pays money. *Scapa Dryer*, 418 Md. at 529, 16 A.3d 159.[9]

One way to be deemed a joint tortfeasor is to contractually agree, specifically stipulating to that status in a settlement agreement. *See Jones v. Hurst*, 54 Md.App. 607, 610, 459 A.2d 219 (1983) (release included language that settling defendant was considered to be a joint tortfeasor "as if judgments had been rendered against" it). Alternatively, a party may be determined to be a joint tortfeasor by judicial determination.

Here, there was no admission in the Release Agreement that Mercy was a joint tortfeasor. Indeed, Mercy expressly denied liability as a joint tortfeasor, and the Release Agreement specifically stated that Mercy was not to be "deemed joint tortfeasors for purposes of this Release." The Release Agreement specified that Dr. Julian was not entitled to a reduction in damages "unless and until" Mercy was adjudicated a joint tortfeasor. It provided for a reduction of the

9. Although most state statutes governing joint tortfeasor liability provide that "any payment made by any person for compensation of the harm automatically receives a credit against the judgment amount, whether or not the person making the payment is a joint tortfeasor or whether he or she is liable to the plaintiff," "[i]n Maryland, if a person has not been guilty of any wrongdoing, and that person obtains a release for himself or herself from the injured party, this does not affect the liability of others." G. Shadoan, et al., *Maryland Tort Damages*, 6th ed. (MICPEL 2006) at 191–92. "Any settlement amount so received is a 'voluntary payment' for which no contribution or offset is required." *Id.* (quoting *Porter Hayden Co. v. Bullinger*, 350 Md. 452, 477, 713 A.2d 962 (1998)).

damage award pursuant to the UCATA only "in the event" Mercy was adjudicated a joint tortfeasor.

■ Thus, pursuant to the terms of the Release Agreement, there was no automatic statutory reduction of the verdict against Dr. Julian. A reduction was conditional; it would occur only "in the event" Mercy was adjudicated to be a joint tortfeasor.

The question here is whether this adjudication regarding tortfeasor status was required to take place in the underlying action. Certainly, this was one way to resolve the issue, and the Court of Appeals, in *Swigert v. Welk*, 213 Md. 613, 133 A.2d 428 (1957), recognized the right of the nonsettling defendant to insist on this way of proceeding. In *Swigert*, Ms. Newport, a passenger in defendant Swigert's car, was injured when Mr. Swigert's car collided with Mr. Welk's car. *Id.* at 615, 133 A.2d 428. Mr. Swigert filed a third party complaint against Mr. Welk for contribution. *Id.* Before trial, Ms. Newport and Mr. Welk reached a settlement, signing a release that provided for a "mandatory" reduction in all damages recoverable by her from other joint tortfeasors "to the extent of the statutory pro rata share" of Mr. Welk. *Id.* at 618, 133 A.2d 428. The trial court subsequently granted Mr. Welk's motion for summary judgment and dismissed him from the lawsuit. *Id.* at 618, 133 A.2d 428. The Court of Appeals reversed, holding that Mr. Swigert was entitled to the " 'extremely valuable right of retaining [Mr. Welk] in the case' " to establish his status as a joint tortfeasor to obtain a pro rata reduction in damages. *Id.* at 621, 133 A.2d 428 (quoting *Davis v. Miller*, 385 Pa. 348, 123 A.2d 422, 424 (1956)). It stated that it "would create a somewhat incongruous procedural situation to have a party to a case completely dismissed and leave the question of his liability to be determined." *Id.* at 622, 133 A.2d 428.

In *Swigert*, the nonsettling defendant wanted the settling defendant to stay in the case to adjudicate its status as a joint tortfeasor, and the Court of Appeals held that the nonsettling defendant was entitled to do so. *Id.* The Court, however, did

not hold that the adjudication of the settling defendant's liability *must* be determined in the underlying action.

Although considerations of judicial economy weigh in favor of adjudicating the joint tortfeasor status of the settling defendant in the underlying action, Dr. Julian asserts that "[t]here are countless strategic reasons that a defendant may wish to forego a cross-claim or third-party claim until after resolution of the underlying 'primary' litigation." He explains:

> For example, should the defendant be successful in the primary matter, the secondary action becomes moot. Accordingly, by deferring the contribution action until resolution of the primary, upon a successful defense of the primary action, a party potentially saves the expense associated with pursuing the subsequent contribution action. Furthermore, a defendant may not wish to battle against multiple parties during the primary matter. The expert witnesses necessary to defend the primary malpractice allegations may differ from those necessary to prosecute a contribution action. Thus, addressing both aspects in one trial can be costly, as well as overly complex and confusing, when presenting them to a jury.[10]

Thus, we turn to consider whether there is any bar to filing a contribution claim in a subsequent proceeding, *i.e.*, whether there is any requirement that the claim be brought in the underlying action. We have been unable to find any such requirement.

Indeed, Maryland cases have held, albeit in different factual scenarios, that a defendant in a lawsuit is not required to raise any claim he or she may have against another person as a cross-claim in that litigation. In *Lerman v. Heeman*, 347 Md. 439, 445–46, 701 A.2d 426 (1997), the Court of Appeals held that a cross-claim is not a prerequisite to a contribution action. In that case, a jury found Dr. Lerman and Dr. Heeman liable

---

10. We note further that, depending on the timing of the settlement, the nonsettling defendant may not be in a position to prove the joint tortfeasor status of the settling defendant.

in a medical malpractice action. *Id.* at 441, 701 A.2d 426. Dr. Heeman subsequently paid more than his share of the verdict. *Id.* at 442, 701 A.2d 426. Ten months after the verdict, he filed a Motion for Judgment of Contribution. *Id.* The Court of Appeals rejected Dr. Lerman's argument that a right to contribution can be acquired only if it was asserted in a cross-claim in the original trial. *Id.* at 443, 701 A.2d 426. The Court held that Rule 2–614 permitted a motion for contribution as an alternative to a cross-claim. *Id.* at 447, 701 A.2d 426.[11] Significantly, the Court noted that Rule 2–614 allows a motion in the original action to avoid a separate lawsuit for contribution, but "initiation of a separate action by defendant A against defendant B is an alternative method of proceeding." *Id.* at 445, 701 A.2d 426 (quoting PAUL V. NIEMEYER & LINDA M. SCHUETT, MARYLAND RULES COMMENTARY 475 (2d ed.1992)).

Similarly, in *Garlock, Inc. v. Gallagher*, 149 Md.App. 189, 207–09, 814 A.2d 1007, *cert. denied*, 374 Md. 359, 822 A.2d 1224 (2003), this Court held that a plaintiff did not have a right to prevent the dismissal of cross-claims among defendants. We stated that "cross-claims are not mandatory; we allow them to be appended to the primary case for the sake of efficiency, but they just as well may be pursued in a second trial. They are tied in time to the primary case, but retain an independent claim status." *Id.* at 207, 814 A.2d 1007.

The Spences, however, claim that C.J.P. § 3–1405 prohibits an independent contribution claim if the release provides for a reduction of damages. We agree, if the release so provides.

---

**11.** Maryland Rule 2–614 provides:

**Judgment of contribution or recovery over.**

If in a single action a judgment is entered jointly against more than one defendant, the court upon motion may enter an appropriate judgment for one of the defendants against another defendant if (a) the moving defendant has discharged the judgment by payment or has paid more than a pro rata share of the judgment and (b) the moving defendant has a right to contribution or to recovery over from the other defendant.

The problem here is that the provision for a reduction in damages was conditional.

We hold that, where a release conditions a reduction of damages on an adjudication of joint tortfeasor status of the settling defendant, and where there is no such adjudication in the underlying litigation, the release does not provide for a reduction pursuant to C.J.P. § 3–1405. In these circumstances, the right to contribution is not extinguished.

Accordingly, Dr. Julian's failure to assert a cross-claim against Mercy, or his failure to file his own third-party claim against Mercy after it was dismissed, does not bar an independent claim of contribution. Although, pursuant to *Swigert*, 213 Md. at 613, 133 A.2d 428, Dr. Julian could have insisted on keeping Mercy in the Primary Action, he was not required to do so. He had the option to adjudicate Mercy's status as a joint tortfeasor in a subsequent proceeding.

Parties entering a settlement agreement have various options in structuring a release agreement. They may specifically provide, pursuant to *Jones*, 54 Md.App. at 610, 459 A.2d 219, that the settling defendant is a joint tortfeasor and any damages assessed against the nonsettling defendant(s) will be reduced to the extent of the pro rata share of the released tortfeasor. Such a release implicates C.J.P. § 3–1405. By providing for a reduction, it protects the settling defendant from a claim for contribution, and it eliminates the need for the settling defendant to remain in the case as a party.

If the parties do not state in the settlement agreement that the settling defendant is a joint tortfeasor, and instead, require an adjudication of joint tortfeasor status, § 3–1405 is not implicated in the absence of such an adjudication. Pursuant to *Swigert*, 213 Md. at 619–20, 133 A.2d 428, the nonsettling defendant has the right to insist that this adjudication occur in the plaintiff's case and that the settling defendant remain in the case to obtain an adjudication of its joint tortfeasor status. If the settling defendant is adjudicated to be a joint tortfeasor, then the damages awarded will be reduced as provided in the

release, and the nonsettling defendant has no right to contribution.

As indicated, however, there is no requirement that the nonsettling defendant proceed with a claim against the settling defendant in the plaintiff's case against it. If the settling defendant does not remain in the underlying action, and a judgment is rendered against the nonsettling defendant, he or she retains the right to pursue an independent contribution claim.

Dr. Julian did not waive his right to contribution by failing to raise the issue in the Primary Action. Accordingly, we affirm the judgment of the circuit court in the declaratory judgment action, finding that Dr. Julian had the right to file a contribution action, and we reverse the judgment of the circuit court dismissing Dr. Julian's contribution claim.

**JUDGMENT OF THE CIRCUIT COURT GRANTING DECLARATORY JUDGMENT IN FAVOR OF DR. JULIAN AFFIRMED. JUDGMENT OF THE CIRCUIT COURT DISMISSING DR. JULIAN'S CONTRIBUTION COMPLAINT REVERSED. COSTS TO BE PAID BY WYCINNA AND CHRISTOPHER SPENCE.**