56 A.3d 147

**MERCY MEDICAL CENTER, et al.**

v.

**Emerson R. JULIAN, Jr., et al.**

**Wycinna L. Spence, et vir.**

v.

**Emerson R. Julian, Jr., et al.**

**Nos. 118, 119, Sept. Term, 2011.**

Court of Appeals of Maryland.

Nov. 27, 2012.

Kelly Hughes Iverson (Craig B. Merkle of Goodell, DeVries, Leech & Dann, LLP, Baltimore, MD), on brief, for Petitioners in No. 118, Sept. Term, 2011.

Rignal W. Baldwin, Jr. (Jeffrey P. Bowman of Baldwin, Kagan & Gormley, LLC, Annapolis, MD), on brief for Petitioners in No. 119, Sept. Term, 2011.

James L. Shea (Mitchell Y. Mirviss, Michael J. DeVinne, and Viktoriya M. Shpigelman of Venable LLP, Baltimore, MD; David A. Levin and Michelle R. Mitchell of Wharton, Levin, Ehrmantraut & Klein, P.A., Annapolis, MD), on brief, for Respondents.

George S. Tolley, III, Esquire, Dugan, Babij & Tolley, LLC, Timonium, MD, for amicus curiae brief of Maryland Association for Justice in Support of Petitioners.

J. Mark Coulson, Esquire, Jonathan Singer, Esquire, Miles & Stockbridge, PC, Baltimore, MD, for amici curiae brief of Johns Hopkins Health System, Lifebridge Health, Inc., Medstar Health, and University of Maryland Medical System Corporation in No. 118, Sept. Term, 2011.

Albert D. Brault, Esquire, Joan F. Brault, Esquire, Brault Graham, LLC, Rockville, MD, for amici curiae brief of Maryland State Medical Society and Medical Mutual Liability Insurance Society of Maryland.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

BATTAGLIA, J.

Two petitions for certiorari were presented for our review that pertain to contribution among joint tort-feasors[1] and arise from one medical malpractice action, in which the Petitioners Wycinna and Christopher Spence[2] (collectively "the Spences") alleged wrongful death and survival claims against Mercy Medical Center, Inc. ("Mercy"),[3] also a Petitioner, and

---

1. "The Maryland Code uses the hyphenated form 'tort-feasor,' while others have omitted the hyphen. Out of deference to the Legislature, we shall adopt the hyphen, except where quoting from a nonhyphenating source." *Owens–Corning Fiberglas Corp. v. Garrett*, 343 Md. 500, 530 n. 13, 682 A.2d 1143, 1158 n. 13 (1996).

2. According to the complaint in the original action, Christopher Spence and Wycinna Spence, individually and as the personal representative of the estate of their son Caleb Spence, were the plaintiffs.

3. The Spences' complaint in the original action named Mercy Medical Center, Inc. as a defendant. The Spences and Mercy Medical Center, Inc. entered into a Confidential Settlement Release Agreement ("Release"), naming the following as "Released Parties":

"Released Parties" are MERCY MEDICAL CENTER, INC. and its nurses, resident physicians and other agents, servants, employees, principals, heirs, executors, administrators, predecessors, successors, affiliates, corporate parents, subsidiaries, privies, directors, officers, attorneys, insurers and reinsurers. The term "Released Parties" does not include EMERSON R. JULIAN, JR., M.D., EMERSON R. JULIAN, JR., M.D., P.A. and HARBOR CITY OB/GYN ASSOCIATES, L.L.C.

Respondents Emerson R. Julian, Jr., M.D., and his practices Emerson R. Julian, Jr., M.D., P.A., and Harbor City OB/GYN Associates, LLC (collectively "Dr. Julian"). The issue of contribution arises in this matter because the Spences and Mercy entered into a pretrial settlement, by which the Spences agreed to dismiss their claims against Mercy for an undisclosed amount, without exacting an admission of liability; after Mercy was dismissed as a party, the case proceeded to trial against Dr. Julian, which ultimately resulted in an award to the Spences of $2,186,342.50.

Dr. Julian, in one of the two cases now under our review, subsequently initiated a separate action against Mercy seeking contribution. The Spences contemporaneously brought suit against Dr. Julian, seeking a declaration that he was not entitled to contribution. Both Mercy and the Spences argued before the trial court and before us that under the Maryland Uniform Contribution Among Joint Tort–Feasors Act, Sections 3–1401 to 3–1409 of the Courts and Judicial Proceedings Article, Maryland Code (1973, 2006 Repl.Vol.) ("the Act"),[4] their release extinguished any right that Dr. Julian had to seek contribution against Mercy, because he did not join Mercy as a third party defendant in the original action after it was dismissed as a party. The Court of Special Appeals consolidated both cases, 201 Md.App. 562, 566, 30 A.3d 220, 223 (2011), and we continue that joinder, to consider whether Dr. Julian may pursue, in a separate action, contribution against Mercy after it had settled with, and been voluntarily

---

Dr. Julian subsequently filed a complaint for contribution against Mercy Medical Center, Inc. and its nurses, Justine Mammeri, MSN, CNM, and Tina Call (now Safaraz), RN. A third nurse, Rachel Breman, RN. was also named a defendant in the complaint for contribution but was not served and, pursuant to Rule 2–507(b), she was dismissed for lack of jurisdiction. In our discussion we shall refer to Mercy Medical Center, Inc. and its nurses as a singular entity, "Mercy."

**4.** All subsequent references to the Maryland Uniform Contribution Among Joint Tort–Feasors Act, or "the Act," are to the Courts & Judicial Proceedings Article, Maryland Code (1973, 2006 Repl.Vol.).

dismissed by, the Spences subsequent to the filing of suit but prior to trial.[5]

The concept of a "joint tort-feasor" is derived from the notion that a single injury can result from the joint actions of two or more individuals, who, putting aside defenses, may be jointly and severally liable. W. Page Keeton, Prosser and Keeton on the Law of Torts § 41, at 268 (5th ed. 1984). Each individual is severally liable for the entire damage, regardless of whether the conduct of one directly caused more or less injury compared to that of another, because they acted together with a common purpose resulting in responsibility for the common injury.[6] *Consumer Protection Division v. Morgan,*

---

5. We granted Mercy's Petition for Writ of Certiorari, 424 Md. 628, 37 A.3d 317 (2012), for consideration of the following questions:
   1. Did the Court of Special Appeals err when it interpreted the Maryland Uniform Contribution Among Joint Tort–Feasors Act ("the Act") to require a stipulation of joint tort-feasor status in order to comply with § 3–1405 and relieve a settling tort-feasor from liability to pay contribution?
   2. Did the Court of Special Appeals err when it concluded that parties released by a *"Swigert [v. Welk,* 213 Md. 613, 133 A.2d 428 (1957) ]" *pro rata* release could be sued in a later action for contribution?
   3. If a joint tort-feasor may pursue a post-judgment action for contribution against a party released by a "Swigert" *pro rata* release, may he recover money damages from the "Swigert" defendant, or is the remedy limited to a reduction of the judgment?

   We also granted the Spences' Petition for Writ of Certiorari, 424 Md. 628, 37 A.3d 317 (2012) to consider the following questions:
   1. Did the Court of Special Appeals err in holding that Section 3–1405 of the UCATA [Maryland Uniform Contribution Among Tort–Feasors Act] does not bar Respondents' right to obtain contribution from Mercy?
   2. Did the Court of Special Appeals err in determining that Respondents did not waive their right to claim the benefit of a release and their right to contribution by failing to raise an affirmative defense of release and failing to prove negligence by Mercy in the medical malpractice action?

6. Concerted actions may be juxtaposed with concurrent actions, an alternative basis for joint tort-feasor liability which is not at issue in this case, relating to independent actors whose separate conduct together cause a single, indivisible injury. *Consumer Protection Division v. Morgan,* 387 Md. 125, 178–79, 874 A.2d 919, 950 (2005).

387 Md. 125, 178, 874 A.2d 919, 950 (2005), citing William L. Prosser, *Joint Torts and Several Liability,* 25 Cal. L.Rev. 413, 414 (1936); *see also Parler & Wobber v. Miles & Stockbridge, P.C.,* 359 Md. 671, 687, 756 A.2d 526, 534 (2000).

Under common law, the injured party, considered "lord of his action," could pursue any or all of the joint tort-feasors to recover damages. *E.g.,* Prefatory Note, Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings of the Forty–Ninth Annual Conference 240–41 (1939). The right of contribution among joint tortfeasors, so that one who paid the damages caused by several would be able to spread the loss among the group of tort-feasors, was prohibited. One basis for not permitting the apportionment of an award of damages among joint tort-feasors was that "the claimant for contribution [was thought to be] a 'bad man' and hence not entitled to the aid of the courts." Charles O. Gregory, *Contribution Among Joint Tortfeasors: A Defense,* 54 Harv. L.Rev. 1170, 1170 (1941). As the injured party could have but one recovery, one joint-tort feasor could not settle without necessitating a release of the entire claim, as "a release of one joint tortfeasor releases all." Stuart M. Speiser et al., 1A The American Law of Torts § 5:42, at 577(2003); *accord Gunther v. Lee,* 45 Md. 60, 67 (1876) ("All the cases, both English and American, maintain the doctrine that satisfaction from one joint tort-feasor, whether received before or after recovery, extinguishes the right as against the others.").

The bar against contribution was criticized, from the viewpoint of the joint tort-feasor who had assumed total responsibility, as unfair and collusive between the injured party and another culpable person who escaped "scot free" from liability. Prosser and Keeton on the Law of Torts § 50, at 338. Nevertheless, a joint tort-feasor remained motivated to settle for less than the full amount, because of the "fear of each that unless he settles he may have to bear alone the full weight of the verdict." Fleming James, Jr., *Contribution Among Joint Tortfeasors: A Pragmatic Criticism,* 54 Harv. L.Rev. 1156, 1161 (1941).

Contribution provided the societal benefit of a broader distribution of loss. Ernest M. Jones, *Contribution Among Tortfeasors*, 11 U. Fla. L.Rev. 175, 187–88 (1958). In place of perceived unjust enrichment and favoritism towards actors who were not pursued by an injured party for recovery, the right to contribution promoted fairness under the maxim "Equality is equity." *Id.* at 182; Robert A. LeFlar, *Contribution and Indemnity Between Tortfeasors*, 81 U. Pa. L.Rev. 130, 136–37 (1932). Contribution also supplied greater certainty of liability to joint tort-feasors, who were able to determine their proportional share of the common liability based on the number of joint tort-feasors. William M. Landes & Richard A. Posner, Joint and Multiple Tortfeasors: An Economic Analysis, 9 J. Legal Stud. 517, 530–31 (1980).

In conformance with these principles, the Uniform Contribution Among Tortfeasors Act was promulgated in 1939 by the American Law Institute and the National Conference of Commissioners on Uniform Laws to enable a statutory abrogation of the common law bar on contribution, in recognition that "[t]he desire for equal or proportionate distribution of a common burden among those upon whom it rests is everywhere fundamental." Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings of the Forty–Ninth Annual Conference, *supra*, at 240–41. A goal of the draft was to eradicate the common law rule providing a "private, rather than judicial, control of the distribution of loss arising from a common burden of liability," which allowed the injured person to pick and choose "one or more of several tortfeasors commonly liable to suffer judgment, even though trial would have proven them equally responsible...." *Id.* at 241.

In 1941, the General Assembly adopted the Maryland Uniform Contribution Among Joint Tort-feasors Act, modeled on the national paradigm. 1941 Maryland Laws, Chapter 344. Now currently codified as Sections 3–1401 to 3–1409 of the Courts & Judicial Proceedings Article, the Act defines joint tort-feasors as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or

not judgment has been recovered against all or some of them."
Section 3–1401(c). In place of "a release of one releases all"
at common law, the Act provides that a release of one joint
tort-feasor does not relieve the liability of other joint tort-
feasors, but instead reduces the judgment against them by
either the consideration paid for the release or an amount or
proportion provided in the release, whichever is greater:

A release by the injured person of one joint tort-feasor,
whether before or after judgment, does not discharge the
other tort-feasors unless the release so provides, but it
reduces the claim against the other tort-feasors in the
amount of the consideration paid for the release or in any
amount or proportion by which the release provides that the
total claim shall be reduced, if greater than the consider-
ation paid.

Section 3–1404.

■ Necessary to the existence of contribution under the
Act is the determination of joint tort-feasor status, although
the Act "does not specify the test of liability." *Swigert v.
Welk,* 213 Md. 613, 619, 133 A.2d 428, 431 (1957). Our
jurisprudence since the Act's passage provides that a party
may qualify as a joint tort-feasor only by either having been
adjudicated as liable, or having conceded or admitted liability,
as a tort-feasor; threat of suit or suit itself will not suffice:

As the Court of Appeals recognized long ago, "[the Uni-
form Act] does not specify the test of liability. Clearly,
something short of an actual judgment will suffice." *Swi-
gert v. Welk,* 213 Md. 613, 619, 133 A.2d 428 (1957). The
fact, however, that a party has been sued or threatened with
suit is not enough to establish joint tort-feasor status. *See
Owens–Corning Fiberglas [Corp.] v. Garrett,* 343 Md. 500,
531–32, 682 A.2d 1143 (1996). Tort-feasor status, in the
absence of adjudication, generally rests on admission by the
purported tort-feasor of such status. Thus, a party will be
considered a joint tort-feasor when it admits joint tort-
feasor status in a settlement agreement, *see Martinez,* 300
Md. at 94–95, 476 A.2d 197, or if a default judgment has

been entered against a party. *See Porter Hayden Co. v. Bullinger,* 350 Md. 452, 473–74, 713 A.2d 962 (1998) (because a default judgment is considered an admission of liability, it is sufficient to establish joint tort-feasor status). *Spangler v. McQuitty,* 424 Md. 527, 544–45, 36 A.3d 928, 938 (2012), quoting *Jacobs v. Flynn,* 131 Md.App. 342, 374–75, 749 A.2d 174, 191 (2000). Obviously, one who is not determined a joint tort-feasor is not subject to contribution under the Act; without an admission or adjudication of liability, a party who enters into a release is deemed a volunteer, not a joint tort-feasor. *Scapa Dryer Fabrics, Inc. v. Saville,* 418 Md. 496, 529–30, 16 A.3d 159, 178 (2011).

Sections of the Act in play in the present case include Section 3–1402, which enables the right of contribution among joint tort-feasors and specifies that it is only when one joint tort-feasor discharges the common liability or pays more than a pro rata share of liability that the right to pursue contribution, in the form of a money judgment, accrues:

(a) *In general.*—The right of contribution exists among joint tort-feasors.

(b) *Discharge of liability or payment of share.*—A joint tort-feasor is not entitled to a money judgment for contribution until the joint tort-feasor has by payment discharged the common liability or has paid more than a pro rata share of the common liability.

(c) *Effect of settlement.*—A joint tort-feasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tort-feasor whose liability to the injured person is not extinguished by the settlement.

"Pro rata" anticipates equal shares that are determined by dividing the common liability by the number of joint tort-feasors. *Hashmi v. Bennett,* 416 Md. 707, 719 n. 13, 7 A.3d 1059, 1066 n. 13 (2010), citing *Lahocki v. Contee Sand & Gravel Co.,* 41 Md.App. 579, 616, 398 A.2d 490, 511 (1979), *rev'd on other grounds sub nom. General Motors Corp. v. Lahocki,* 286 Md. 714, 410 A.2d 1039 (1980).

The other section of interest in this case is Section 3–1405 of the Act, which provides for the extinguishment of contribution by a released joint tort-feasor under certain conditions:

A release by the injured person of one joint tort-feasor does not relieve the joint tort-feasor from liability to make contribution to another joint tort-feasor unless the release:

(1) Is given before the right of the other tort-feasor to secure a money judgment for contribution has accrued; and

(2) Provides for a reduction, to the extent of the pro rata share of the released tort-feasor, of the injured person's damages recoverable against all other tort-feasors.

At issue before us presently is the impact of a release of one defendant, who does not admit joint tort-feasor status and has not been adjudicated as such, on the ability of another defending party to pursue contribution against the released defendant in a subsequent separate action. Specifically, Mercy was released by the Spences prior to trial in the original medical malpractice action; together the Spences and Mercy contend that their Confidential Settlement Release Agreement ("Release") extinguished Dr. Julian's right to contribution against Mercy under the Act.

The Release provided, in pertinent part, that Mercy as "Released Parties" was not a joint tort-feasor and if it were subsequently adjudicated liable, then the Spences' recovery against other defending parties, namely Dr. Julian, would be reduced by Mercy's pro rata share of the judgment, so to "relieve and protect [Mercy] from any liability for contribution to any person":

**7.   *Joint–Tortfeasor Nature of Agreement:***

a.   The [Spences] and the Released Parties agree and understand that this is a *"Swigert* Release" as set out in the case of *Swigert v. Welk,* 213 Md. 613, 133 A.2d 428 (1957), and, in accordance with that decision and the Maryland Uniform Contribution Among Joint Tort–Feasors Act, Md. Code Ann. Cts. & Jud. Proc. 3–1401 et seq. (1974, 2002 Repl.Vol.) ("the Act"), *the Released Parties are neither deemed joint tortfeasors for purposes of this Release,* nor

are [the Spences] hereby releasing any other person or entity, whether or not a named party to this agreement. Any person or entity, other than the Released Parties, whom the [Spences] claim are liable to them for the injuries, losses and damages which are the subject of this action shall not be entitled to any reduction of the damages the [Spences] are claiming against them by reason of the payment herein, unless and until the Released Parties have been adjudicated to be Joint Tortfeasors with said other person or entity. *In the event the Released Parties are adjudicated to be Joint Tortfeasors liable to the [Spences] for damages, the [Spences] agree that their damages recoverable against all other tort-feasors, including but not limited to [Dr. Julian], will be reduced to the extent of the pro rata share of the Released Parties pursuant to the Maryland Uniform Contribution Among Joint Tort–Feasors Act, Md. Cts. & Jud. Proc.Code Ann § 3–1405 (1974, 2002 Repl.Vol., 2005 Supp.).* This provision is further intended to relieve and protect the Released Parties from any liability for contribution to any person, firm, partnership or corporation.

(Emphasis added). The Spences further agreed to indemnify Mercy for any and all claims of contribution asserted by Dr. Julian against Mercy and to hold in escrow one half of any judgment rendered against Dr. Julian until Dr. Julian's claim for contribution had been extinguished:

**8.** *Indemnity & Hold Harmless & Escrow:*

a. The [Spences] hereby covenant and agree for themselves and their successors, heirs, administrators, executors and assigns to indemnify and hold harmless the Released Parties for any and all claims, demands, actions, cross-actions, causes of actions [sic], judgments, suits or complaints of any kind that may be asserted by any person, persons, firms, corporations or other entity against the Released Parties as a result of or in any way connected with any claim, cross claim, demand, action, indemnity claim, contribution claim, lien, suit, judgment, or finding of any Court in any way arising out of or relating to the Occur-

rence, or any alleged injuries claimed by or allegedly sustained by the [Spences] individually or on behalf of the Estate of CALEB SPENCE or any claim for damages by any person claiming a right to recover due to the death of CALEB SPENCE. This duty to indemnify includes any and all claims, demands or actions for contribution and/or indemnity, or disputes over the number of joint tortfeasors that may be asserted against [Mercy] by [Dr. Julian] or anyone acting on their behalf.

b. If there is a judgment in favor of the [Spences] against [Dr. Julian], the [Spences] shall hold in escrow one half of the amount of such judgment (upon receipt of payment) in an interest bearing account. The escrowed funds are intended as security for the benefit of the Released Parties for any future indemnity payments that the [Spences] are obligated to pay to the Released Parties under this Release Agreement. Said funds shall be escrowed for three years from the date of judgment or until [Dr. Julian's] claim for contribution has been extinguished.

Mercy's liability was never adjudicated in the original medical malpractice action. Although Dr. Julian apparently objected,[7] the Spences voluntarily dismissed Mercy from the case prior to trial, as they had agreed to do so in the Release.[8] A jury returned a verdict of more than $8,000,000 against Dr. Julian, which was subsequently reduced to $2,186,342.50 pur-

---

7. In a letter dated October 6, 2006, counsel for Dr. Julian objected to the stipulation of voluntary dismissal of Mercy, stating:

> Because it is my understanding that Mercy Medical Center has entered into a swigert-type [sic] release in this case, I cannot agree to the dismissal of the claims against Mercy Medical Center.
> This is to request that the Stipulation of Voluntary Dismissal be withdrawn.

The letter indicates that a courtesy copy was also sent to the Clerk of the Circuit Court for Baltimore City.

8. The Release provided that shortly after receiving Mercy's settlement payment, the Spences would voluntarily dismiss Mercy:

> **10. *Dismissal of Lawsuit:*** The [Spences] agree to execute within 10 days of the receipt of the consideration noted herein, a Stipulation of Dismissal with prejudice in Case No. 24–C–05–001852, Circuit Court for Baltimore City, as to Defendant Mercy Medical Center, Inc.

suant to the statutory cap on non-economic damages;[9] Dr. Julian satisfied the judgment in full.

The two companion cases now under our review followed. In September 2009, Dr. Julian filed a complaint for contribution against Mercy. Mercy moved to dismiss, or in the alternative for summary judgment, arguing that the Release satisfied Section 3–1405 of the Act, by "specifically provid[ing] for a *pro rata* reduction in favor of [Dr. Julian] in the event Mercy or any of its agents or employees was adjudicated to be a joint tortfeasor liable to the Spences," and therefore extinguished the right to contribution against it. Mercy alternatively argued that Dr. Julian could have, but waived, the opportunity to seek contribution during the original medical malpractice claim and therefore his separate action for contribution was barred. In opposing the motion, Dr. Julian contended that Section 3–1405 was not applicable, because Mercy had yet to be determined a joint tort-feasor, and he did not waive his right to contribution by not pursuing it in the original medical malpractice action because he was not man-

---

**9.** Section 11–108(b) of the Courts & Judicial Proceedings Article, Maryland Code (1973, 2006 Repl.Vol.), provides:

(b) *Limitation on amount of damages established.*—(1) In any action for damages for personal injury in which the cause of action arises on or after July 1, 1986, an award for noneconomic damages may not exceed $350,000.

(2) (i) Except as provided in paragraph (3)(ii) of this subsection, in any action for damages for personal injury or wrongful death in which the cause of action arises on or after October 1, 1994, an award for noneconomic damages may not exceed $500,000. (ii) The limitation on noneconomic damages provided under subparagraph (i) of this paragraph shall increase by $15,000 on October 1 of each year beginning on October 1, 1995. The increased amount shall apply to causes of action arising between October 1 of that year and September 30 of the following year, inclusive.

(3) (i) The limitation established under paragraph (2) of this subsection shall apply in a personal injury action to each direct victim of tortious conduct and all persons who claim injury by or through that victim.

(ii) In a wrongful death action in which there are two or more claimants or beneficiaries, an award for noneconomic damages may not exceed 150% of the limitation established under paragraph (2) of this subsection, regardless of the number of claimants or beneficiaries who share in the award.

dated by the Maryland Rules to file a cross-claim against Mercy.

In a Memorandum Opinion and Order Granting Mercy's Motion to Dismiss Without Prejudice, the Circuit Court Judge concluded that Mercy's Release complied with the requirements of Section 3–1405. The judge concluded that the Release limited Dr. Julian to pursuing a reduction in the original medical malpractice action, by way of "cross claim or motion," which he did not do and barred a separate contribution action against Mercy:

> [W]hen [Section 3–1405]'s requirements are met, released defendants may be brought into or retained in a case, for example by cross claim or motion, for the sole purpose of seeking a reduction in judgment and not for the purpose of contribution. Defendants thus released are compelled to participate in the trial only in order to have it determined whether they are joint tortfeasors, the unreleased defendant having "an extremely valuable right in retaining [the released defendant] in the case, because, if the jury should find [the released defendant] to be a joint tortfeasor, [the unreleased defendant's] liability to plaintiffs would be cut in half." [*Swigert*, 213 Md. at 622, 133 A.2d 428].
>
> \*       \*       \*
>
> Because the release (1) occurred before Dr. Julian's right of contribution accrued under [Section] 3–1402 and (2) provided for a pro rata reduction as understood in *Swigert*, Mercy is relieved from any liability for contribution in this matter.
>
> CONCLUSION:
>
> On the basis of the statutes and case law above, this Court must conclude that Dr. Julian's contribution claim against Mercy is barred. That is the only decision consistent with [Section] 3–1405 and with *Swigert*. Defendant's motion to dismiss will be granted without prejudice.

(Internal footnote omitted). Dr. Julian appealed.

In April 2009, upon learning that Dr. Julian was pursuing a contribution action against Mercy, the Spences filed a Complaint for Declaratory and Injunctive Relief in the Circuit

Court for Baltimore City. The Spences requested a declaration that Dr. Julian was barred from the right to pursue contribution from Mercy because he had failed, in the original action brought by the Spences, to prove that Mercy was negligent or, alternatively, to affirmatively plead release as an affirmative defense.

Both the Spences and Dr. Julian moved for summary judgment, agreeing that there was no dispute of material fact. Dr. Julian argued that upon paying more than his pro rata share of the liability, he was entitled to pursue, in a separate action, contribution from Mercy pursuant to Section 3–1402 of the Act. The Spences responded that their Release of Mercy satisfied Section 3–1405 and extinguished Dr. Julian's right to contribution. Alternatively, the Spences contended that as a result of the Release, the doctor's pursuit of contribution was limited to the original medical malpractice action and without pleading the affirmative defense of release, or pursuit of a cross-claim against Mercy, in that case, Dr. Julian effectively waived his right to contribution under the Act. Issuing a declaratory judgment in favor of Dr. Julian, a different Circuit Court Judge, Judge Evelyn O. Cannon, disagreed with the Spences, in part on the bases that his right to contribution was neither barred by Section 3–1405 nor waived by his decision not to file a cross-claim for contribution or plead release as an affirmative defense:

> Defendants [Dr. Julian] have not waived any right to assert a claim for setoff or contribution against Mercy Medical Center in connection with the judgment against [Dr. Julian] in *Wycinna Spence, et al. v. Emerson Julian, et al.*, Circuit Court for Baltimore City, Case no. 24–C–05–1852. [Dr. Julian's] decision not to file a cross-claim or plead "release" did not waive their right to file a claim or setoff or contribution and the claim is not barred by [Section] 3–1405 or res judicata. There has not been a judicial finding [that] Mercy Medical Center was or was not a joint tortfeasor.

The Spences appealed.

Before the Court of Special Appeals, the Spences, Mercy and Dr. Julian filed a Joint Motion to Consolidate Appeals,

wherein they acknowledged that the appeals of the Spences in the declaratory judgment action and Dr. Julian in the contribution action were from contradictory orders of the Circuit Court from Baltimore City involving identical issues. The Court of Special Appeals granted the joint motion and consolidated the declaratory judgment action and the contribution action to consider

> whether, when a release provides for a reduction of damages awarded against a nonsettling defendant, but only if the settling defendant is adjudicated to be a joint tortfeasor, is the nonsettling defendant required to litigate the settling defendant's joint tortfeasor status in the underlying action, or does he have the option to litigate that issue in a separate contribution action.

201 Md.App. at 579–80, 30 A.3d at 231.

The intermediate appellate court initially addressed whether the Release satisfied the two conditions of Section 3–1405, so as to extinguish Dr. Julian's right to contribution. Observing there to be no dispute that the first condition, requiring the release to be given before Dr. Julian's right to contribution accrued, "*i.e.,* before he ... has paid more than his ... pro rata share," 201 Md.App. at 582, 30 A.3d at 232, was satisfied, the court then looked to whether the Release provided for a reduction, representing Mercy's pro rata share, in the Spences' damages recovered against Dr. Julian, pursuant to Section 3–1405(2). The Release did not satisfy Section 3–1405(2), concluded the intermediate appellate court, because its terms conditioned the pro rata reduction "[i]n the event" Mercy was adjudicated by the trial court to be a joint tortfeasor, which had not occurred. *Id.* at 588, 30 A.3d at 235.

The Court of Special Appeals then addressed whether the determination of Mercy's liability was required to occur in the original medical malpractice action brought by the Spences, as the judge in the contribution action had expressly determined. The intermediate appellate court concluded that there was no Maryland statute, case law or rule that prohibited an independent contribution action under the circumstances of this case. *Id.* at 588–89, 30 A.3d at 235. Affirming the decision in the

declaratory judgment action, but reversing the decision in the contribution action, the Court of Special Appeals ultimately held that Dr. Julian was not prohibited from pursuing contribution from Mercy in a separate action. *Id.* at 589, 30 A.3d at 236.

Before us, the issue continues to be whether and to what extent the release of one defending party, without admission of joint tort-feasor status, may negate or limit another's right to contribution under the Act. Historically, "[t]he effect of a settlement with the plaintiff by the contribution defendant, who has received a release or a covenant not to sue, has perhaps given more difficulty than any other problem." W. Page Keeton, Prosser and Keeton on the Law of Torts § 50, at 340 (5th ed.1984). Mercy and the Spences challenge Dr. Julian's pursuit of contribution, because they assert that their Release complied with Section 3–1405 of the Act and thus extinguished Mercy's contribution liability to Dr. Julian. Section 3–1405, once again, provides:

A release by the injured person of one joint tort-feasor does not relieve the joint tort-feasor from liability to make contribution to another joint tort-feasor unless the release:

(1) Is given before the right of the other tort-feasor to secure a money judgment for contribution has accrued; and

(2) Provides for a reduction, to the extent of the pro rata share of the released tort-feasor, of the injured person's damages recoverable against all other tort-feasors.

The Spences and Mercy contend that Dr. Julian's right to contribution was extinguished when the Release was given, because the following language of their Release mirrored, and consequently complied with, Section 3–1405(2):

In the event the Released Parties are adjudicated to be Joint Tortfeasors liable to the [Spences] for damages, the [Spences] agree that their damages recoverable against all other tort-feasors, including but not limited to [Dr. Julian], will be reduced to the extent of the *pro rata* share of the Released Parties pursuant to the Maryland Uniform Contribution Among Joint Tort–Feasors Act, Md. Cts. & Jud. Proc.Code Ann § 3–1405 (1974, 2002 Repl.Vol., 2005 Supp.).

Dr. Julian responds, as the Court of Special Appeals determined, that this language of the Release conditioned the reduction of the Spences' judgment against him on the adjudication of Mercy's liability and, because Mercy was dismissed from the original action prior to having been adjudicated as a joint tort-feasor, Mercy's liability had yet to be determined. As a result, Dr. Julian maintains that the Release's conditional language did not operate to satisfy Section 3–1405(2).

For support, the Spences, Mercy, and Dr. Julian each point to our decision in *Swigert v. Welk,* 213 Md. 613, 133 A.2d 428 (1957), in which we considered whether a similar release, without an admission of liability, entitled the released defending party to summary judgment and dismissal from the case. *Swigert* arose out of a two-car collision. The passenger, Evelyn Newport, sued the driver, Harry R. Swigert, who in turn filed a third party complaint for contribution against the second driver, John E. Welk. Mr. Welk moved for summary judgment, contending that he had already entered into a release with Ms. Newport that extinguished his contribution liability, pursuant to Section 24 of Article 50, Maryland Code,[10] now Section 3–1405. In the release, Mr. Welk did not admit liability, but Ms. Newport agreed that her damages recoverable against Mr. Swigert would be reduced by Mr. Welk's pro rata share of the liability, pursuant to the Act:

> IT IS UNDERSTOOD AND AGREED that the payment of said amount by the said Payer (s) is not to be construed as an admission of liability on the part of said Payer (s), but that said payment is in compromise and settlement of my

---

10. Section 24 of Article 50, Maryland Code (1951), the predecessor to Section 3–1405, provided:

> A release by the injured person of one joint tortfeasor does not relieve him from liability to make contribution to another joint tortfeasor unless the release is given before the right of the other tortfeasor to secure a money judgment for contribution has accrued, and provides for a reduction, to the extent of the pro rata share of the released tortfeasor, of the injured person's damages recoverable against all other tortfeasors.

*Swigert,* 213 Md. at 618, 133 A.2d at 430 (emphasis in original removed).

(our) claim which is not admitted but is denied and disputed by said Payer (s); * * *

I/we further agree that all claims or damages recoverable by me/us against all other persons, firms or corporations, jointly or severally liable to me/us in tort for my/our said damages, are hereby reduced, to the extent of the statutory pro rata share of said John E. Welk under the Uniform Contribution Among Tortfeasors Act, of all such damages so recoverable by me/us against all such other joint tortfeasors.

213 Md. at 618, 133 A.2d at 430–31. The Superior Court for Baltimore City granted Mr. Welk's motion for summary judgment, from which Mr. Swigert appealed.

Before us, Mr. Welk (like Mercy and the Spences in the present case) contended that his release "fully complie[d]" with Section 24, and, therefore, barred Mr. Swigert from pursuing contribution. 213 Md. at 617, 133 A.2d at 430. Looking to the language of the release, this Court observed that it was given before Mr. Swigert's right to contribution accrued, and it iterated *verbatim* the second requirement of Section 24, regarding a reduction in damages representing Mr. Welk's pro rata share of the liability. We concluded, nonetheless, that the release "fully complies with this section, ... *if Welk is a tortfeasor*," (emphasis added), which was denied in the settlement release:

There is no contention that it was not obtained "before the right of the other tortfeasor to secure a money judgment for contribution" had accrued, and there was thus included *verbatim* the other requirement or condition of sec. 24. It is clear the release fully complies with this section, and is also within the provisions of sec. 23,[ [11] ] if Welk is a tortfeasor. This, however, is denied in the release.

213 Md. at 618, 133 A.2d at 431. As a result, we reversed the grant of Mr. Welk's summary judgment in Mr. Welk's favor

---

11. Section 23 of Article 50, Maryland Code, now codified as Section 3–1404, provided:

A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the

and remanded the case back to the trial court; Mr. Welk remained as a third party defendant to enable adjudication of his joint tort-feasor status.

Mercy and the Spences apparently interpret *Swigert* to stand for the proposition that a defending party who is released need not stipulate to joint tort-feasor status before its release "fully complies" with Section 24, now Section 3–1405. Dr. Julian responds that *Swigert* does not contradict his position that the Release's conditional language does not comply fully with Section 3–1405 to relieve Mercy's contribution liability.

■ We agree with Dr. Julian. In advocating that *Swigert* is the linchpin in our jurisprudence that a party does not have to be determined a tort-feasor to fully comply with Section 24, now Section 3–1405, Mercy and the Spences ignore the key condition of our conclusion, that being the release "fully complies with this section [24], and is also within the provisions of sec. 23, *if Welk is a tortfeasor. This, however, is denied in the release.*" 213 Md. at 618, 133 A.2d at 431 (emphasis added). As a result of the denial of liability, we rejected Mr. Welk's argument that his release relieved him of his contribution liability, because his contribution liability was conditional. Mr. Welk, impleaded as a third party defendant, had to remain in the case as it proceeded to trial, so as to determine whether Mr. Welk was liable as a joint tort-feasor. Mercy and the Spences, therefore, neglect what we have often affirmed, that a party must have been adjudicated liable or have admitted to joint tort-feasor status for the Act, and of course, Section 3–1405,[12] to apply at all.

---

release so provides; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

*Swigert,* 213 Md. at 617, 133 A.2d at 430 (emphasis in original removed).

**12.** The language of Section 3–1405 itself speaks to "joint tort-feasor," "tort-feasor" and "released tort-feasor."

■ In the absence of an adjudication that the released party is liable as a joint tort-feasor, a release has only evoked the Act, so as to extinguish contribution liability, when it has included an admission of the released defending party's joint tort-feasor status. In *Jones v. Hurst,* 54 Md.App. 607, 610, 459 A.2d 219, 221 (1983), the release included General Motors Corporation's stipulation to be considered as a joint tort-feasor "to the same extent and effect as if judgments had been rendered against [it] as joint tort-feasor[ ]." Based on this concession, the intermediate appellate court held that no subsequent trial, adjudicating the corporation's liability, was necessary; the corporation was dismissed prior to trial and a judgment against another joint tort-feasor was properly reduced by the corporation's pro rata share of the liability. *Id.* at 612–13, 459 A.2d at 222–23. A pro rata release that stipulates to the joint tort-feasor status of the released defendant allows the defendant to avoid going to trial and being adjudicated a joint tort-feasor.

■ By contrast, a release that does not address the liability of the released defending party, and conditions the reduction in the damages recoverable required under Section 3–1405(2), complies with this provision only "if [the released party] is a tortfeasor," *Swigert,* 213 Md. at 618, 133 A.2d at 431. In agreeing to a conditional release, the plaintiff and the released defending party agree to take a risk by having the liability of the released party adjudicated. If the released defending party is adjudicated liable, then the provision in their release, providing for the reduction of a pro rata share in damages recoverable, protects the released party from a contribution claim. Alternatively, if adjudicated not liable, then the released party is a volunteer and the Act does not apply, which allows the plaintiff to recover the judgment from the defendants, without reduction. In both scenarios, the released defending party, whose liability is determined, may not be subject to recovery by either the plaintiff or the other nonsettling defendants. *Swigert,* 213 Md. at 622, 133 A.2d at 433.

We have had occasion to address some of these scenarios. In *Spangler v. McQuitty,* 424 Md. 527, 542–43, 36 A.3d 928, 937 (2012), for example, one of the defendants, a hospital, entered into a release with the plaintiff, without any admission of liability. The trial court granted the hospital's motion for summary judgment as to liability and, as a result, we determined that the hospital, as a "volunteer," was not a joint tortfeasor under the Act, so that the remaining defendant, a doctor against whom judgment was rendered following trial, was not entitled to a reduction in the judgment for the hospital's release under Section 3–1404.

In *Porter Hayden Company v. Bullinger,* 350 Md. 452, 713 A.2d 962 (1998), Porter Hayden Company filed a third party contribution claim against Babcock & Wilcox, who had previously settled with the plaintiff. After Babcock & Wilcox failed to file an answer to the third party complaint, Porter Hayden secured a default judgment. The trial court refused to reduce the judgment against Porter Hayden for Babcock & Wilcox's release, raising the issue of whether the default judgment established the liability of Babcock & Wilcox as a joint tortfeasor. We reversed the trial court, concluding that "[a] default judgment against a settling defendant is akin to an admission of liability" and is "sufficient to establish one a joint tortfeasor for the purposes of the application of section 3–1404 of the [Act]." *Id.* at 474, 719 A.2d at 972.

In *Allgood v. Mueller,* 307 Md. 350, 513 A.2d 915 (1986), released defendants, who had not admitted to being joint tortfeasors, were found not liable at trial. The trial court, however, reduced the plaintiffs' judgment against the remaining culpable defendant in light of the release. We vacated the reduction of the judgment on the basis that the Act did not apply because the released defendants were adjudicated not liable as joint tort-feasors. *Id.* at 354, 513 A.2d at 917.

The Court of Special Appeals's jurisprudence, in requiring that the released party's joint tort-feasor status be determined before a release's effect on contribution can be addressed, is in accord. In *Collier v. Eagle–Picher Industries, Inc.,* 86 Md.

App. 38, 45, 585 A.2d 256, 259–60 (1991), three of several defendants entered into a release, in which they denied joint tort-feasor status, and only one of the three, thereafter, was determined to be liable. The issue arose as to whether the nonsettling defendants were entitled to a reduction in the judgment against them for a portion of this release of one joint tort-feasor and two volunteers. The Court of Special Appeals remanded the case for further consideration as to the amount of the reduction. *Id.* at 64, 585 A.2d at 269. Clearly, the adjudication of the released parties' liability remained a precondition to the consideration of how the release would impact the rights of the nonsettling defendants.

*C & K Lord, Inc. v. Carter,* 74 Md.App. 68, 73–74, 536 A.2d 699, 701–02 (1988), further, involved one of several defendants who entered into a release with the plaintiffs and thereafter was determined by the trial court to be immune from liability; with the released defendant as a volunteer, the judgment against the other defendants could not be reduced for the release.

Mercy and the Spences, however, argue that *"Swigert"* releases have repeatedly been found to comply with Section 3–1405 and extinguish the right to contribution without a determination of joint tort-feasor status. They point first to *Martinez v. Lopez,* 300 Md. 91, 476 A.2d 197 (1984), a case in which we quoted our determination in *Swigert* that the release of Mr. Welk "fully complies with [present § 20], and is also within the provisions of [present § 19], if Welk is a tortfeasor." 300 Md. at 102, 476 A.2d at 203, quoting *Swigert,* 213 Md. at 618, 133 A.2d at 431. We quoted *Swigert,* however, solely as support for the notion that the provisions now known as Sections 3–1404 and 3–1405 are not mutually exclusive. In *Martinez,* the plaintiffs settled with one defendant, a hospital, prior to trial with a release that provided that the hospital would be considered a joint tort-feasor with the remaining defendant, a doctor, and that any recovery against the doctor would be reduced by the pro rata share of the released hospital. Ultimately, the jury award against the doctor was less than the amount of the hospital's settlement, and the issue

arose as to whether a reduction in that judgment, to zero, was provided under Section 19 of Article 50, Maryland Code, now Section 3–1404 of the Act. We answered in the affirmative; clearly the issue of whether the language of the release established the released hospital's joint tort-feasor status was not contested. *Martinez* did not address, nor did it dispel, our interpretation in *Swigert* that a release without a determination of joint tort-feasor status will "fully compl[y]" with Section 3–1405, *if* the released party is a tortfeasor.

Mercy also points to two cases in which they allege that two different judges of the United States District Court for the District of Maryland determined that a conditional release, without an admission of liability, but providing a pro rata reduction of damages recoverable on a subsequent adjudication of the released party's liability, complied with Section 3–1405. In *Montgomery County v. Jaffe, Raitt, Heuer & Weiss,* 897 F.Supp. 233 (D.Md.1995), Montgomery County brought a professional malpractice action against a Michigan law firm, Jaffe, Raitt, Heuer & Weiss ("Jaffe Raitt"), alleging that the law firm's misstatements in an opinion letter led the County to proceed with an ultimately-unsuccessful development project. 897 F.Supp. at 235–36. The County had also filed a separate action against the developers, a limited partnership and its guarantors, but this second action was dismissed after the County and developers settled. *Id.* at 238. The County's release of the developers provided no admission of liability and that the release "shall serve only to reduce any recovery which may be had against the other alleged tortfeasors ... to the extent of the pro rata share recoverable by law from the releasees in accordance with the provisions of the Uniform Contribution Among Joint Tortfeasors Act of Maryland." *Id.* at 239. The release further conditioned this pro rata reduction on the adjudication that the developers were liable for contribution. *Id.* ("Any reduction effected hereby shall not be construed to affect the recovery in any suit, cause of action or claim in which the releasees shall not have been adjudged legally liable for contribution.").

Jaffe Raitt asserted as an affirmative defense a right to contribution, contending that if the developers and Jaffe Raitt were found to be joint tort-feasors, then it was entitled to a reduction in a judgment for the County. In cross-motions for summary judgment, the parties disputed the issue of contribution and the court agreed with the law firm, concluding that Jaffe Raitt was entitled to recover a reduction in the subsequent judgment because it would be inequitable to permit the County to double recovery from Jaffe Raitt as well as developers, who the court described as "wrongdoers," for the same harm. *Id.* at 240.

In response to the County's argument that the developers had to be joined as parties by Jaffe Raitt before the latter could be entitled to contribution, the court also addressed whether the release satisfied Section 20 of Article 50, Maryland Code (1991),[13] now Section 3–1405, to extinguish the developers' contribution liability. The court concluded that so long as the developers are "legally liable for contribution, *i.e.* that [their] status as joint tortfeasor[s] be determined," the language of the release complied with the statute. *Id.* at 239. The District Court concluded that, in the subsequent trial, a judicial determination of the developers' joint tort-feasor status was necessary before the contribution credit was permitted, even though the developers were not a party to the action. *Id.*

---

**13.** Section 20 of Article 50, Maryland Code (1957, 1991 Repl.Vol.) provided:

> A release by the injured person of one joint tort-feasor does not relieve him from liability to make contribution to another joint tort-feasor unless the release is given before the right of the other tort-feasor to secure a money judgment for contribution has accrued, and provides for a reduction, to the extent of the pro rata share of the released tort-feasor, of the injured person's damages recoverable against all other tort-feasors.

Montgomery County v. Jaffe, Raitt, Heuer & Weiss, 897 F.Supp. 233, 238 (D.Md.1995). This provision was previously codified as Section 24 of Article 50, Maryland Code (1951), and subsequently recodified as Section 3–1405 of the Courts & Judicial Proceedings Article, without substantive change.

In *Adams v. NVR Homes, Inc.*, 135 F.Supp.2d 675, 709 (D.Md.2001), another judge of the federal district court considered whether a conditional release, which provided that the damages recoverable be reduced by the released party's pro rata share of the liability if "determined to be joint tortfeasors," satisfied Section 3–1405, so to protect the released defendants from a cross-claim for contribution. The court determined that the language satisfied Section 3–1405(2), so long as the released parties were found to be liable as joint tort-feasors: "Therefore, to the extent that the [released parties] are found to be joint tortfeasors ... [they] are protected against the claim for contribution...." *Id.* at 709.

Mercy's and the Spences' position that a release, providing no admission of liability and a reduction in a judgment against nonsettling defendants if the released party is a joint tort-feasor, will alone satisfy Section 3–1405 and extinguish contribution, thus, is without support. The Spences dismissed Mercy in the original action, prior to any determination of Mercy's liability as a tort-feasor. As a result, we agree with the Court of Special Appeals and conclude that in the absence of an admission of joint tort-feasor status or an adjudication of Mercy's liability, Mercy's and the Spences' conditional release did not comply with Section 3–1405 of the Act and, consequently, did not extinguish Dr. Julian's right to contribution.

■ Mercy and the Spences also, nevertheless, challenge Dr. Julian's ability to bring his contribution claim in a separate action. They assert that Dr. Julian was required to pursue his contribution claim in the original action by virtue of a cross-claim. His failure to do so, they assert, doomed his contribution claim to extinguishment. By so doing, both assert that Dr. Julian had to tether Mercy to the original action after it was voluntarily dismissed by the Spences or lose his contribution claim.

In disagreeing with Mercy and the Spences, we initially note that there is no expression in Section 3–1405, or any other provision of the Act, that a cross-claim for contribution must

be asserted in the original action.[14] Rather our case law, especially *Swigert*, has suggested the pursuit of contribution in the original case to be one possibility:

> While we know of no statute or rule of court that specifically directs the procedure to be followed by the trial Court in having the question of Welk's negligence determined, it is certain that within the scope of present rules of court an easy and practical method is afforded.

*Swigert*, 213 Md. at 622, 133 A.2d at 433.

Our Rules also recognize that a contribution claim *may* be raised in the original action:

> If in a single action a judgment is entered jointly against more than one defendant, the court upon motion may enter an appropriate judgment for one of the defendants against another defendant if (a) the moving defendant has discharged the judgment by payment or has paid more than a pro rata share of the judgment and (b) the moving defendant has a right to contribution or to recovery over from the other defendant.

Rule 2–614. We have had occasion to interpret the Rules in *Lerman v. Heeman*, 347 Md. 439, 445, 701 A.2d 426, 430 (1997), involving a contribution claim that followed a judgment of $3.3 million against two defendants, Dr. Sheldon H. Lerman

---

**14.** The Act as enacted in 1941 originally provided a procedural mechanism by which a defendant could pursue contribution against another by cross-claim or motion in the original action and "[i]f relief can be obtained as provided in this sub-section no independent action shall be maintained to enforce the claim for contribution":

> (c) A pleader may either (a) state as a cross-claim against a co-party any claim that the co-party is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant; or (b) move for judgment for contribution against any other joint judgment debtor, where in a single action a judgment has been entered against joint tortfeasors one of whom has discharged the judgment by payment or has paid more than his pro rata share thereof. If relief can be obtained as provided in this sub-section no independent action shall be maintained to enforce the claim for contribution.

1941 Md. Laws, Chap. 344, § 27(c). Section 27(c) was subsequently repealed by Section 1 of Chapter 399 of the Maryland Laws of 1957.

and Dr. Kerry R. Heeman, of which Dr. Heeman paid $2.3 million and Dr. Lerman paid $1 million. Dr. Heeman filed a Motion for Judgment of Contribution or Recovery Over, seeking contribution for the amount that his payment of the judgment exceeded Dr. Heeman's, which the trial court granted. The Court of Special Appeals affirmed.

Before us, Dr. Lerman contended that "a right to contribution can be acquired only if it was previously asserted in a cross-claim." 347 Md. at 443, 701 A.2d at 428. We disagreed, reasoning that cross-claims are not mandatory and therefore are not prerequisites to pursuing contribution by a post-trial motion under Rule 2–614. *Id.* at 446, 701 A.2d at 430. We continued that Rule 2–614, as a procedural mechanism for recovering contribution, did not alter the original intent of the Act, which did not require the filing of a cross-claim before the pursuit of contribution against a codefendant. We recognized, also, that Rule 2–614 did not mandate the pursuit of contribution prior to judgment in the original action, nor did it bar a contribution claim in a separate action.

We consulted the *Maryland Rules Commentary*, authored by Judge Paul V. Niemeyer and Linda M. Schuett, to interpret Rule 2–614 as a "rule of convenience" that provided the defendant seeking contribution with an alternative to bringing a separate action for contribution. *Id.* at 445, 701 A.2d at 429–30 ("Although initiation of a separate action by defendant A against defendant B is an alternative method of proceeding, defendant A may avoid a separate lawsuit by filing a motion for judgment in the original action," quoting Paul V. Niemeyer & Linda M. Schuett, Maryland Rules Commentary 475 (2d ed. 1992)). Accordingly, we affirmed the grant of Dr. Heeman's motion for contribution, as there is "[n]o rule or statute impos[ing] the *additional requirement* that a co-defendant 'assert' that right in the original trial by filing a cross-claim." *Id.* at 446, 701 A.2d at 430.

Similarly, Rule 2–332, regarding third-party practice, provides that a defendant may, but is not required to, bring a claim against a third party:

(a) **Defendant's claim against third party.** A defendant, as a third-party plaintiff, may cause a summons and complaint, together with a copy of all pleadings, scheduling notices, court orders, and other papers previously filed in the action, to be served upon a person not a party to the action who is or may be liable to the defendant for all or part of a plaintiff's claim against the defendant. A person so served becomes a third-party defendant.

*    *    *

(d) **Additional parties.** A third-party defendant may proceed under this Rule against any person who is or may be liable to the third-party defendant for all or part of the claim made in the pending action. When a counterclaim is asserted against a plaintiff, the plaintiff may cause a third party to be brought in under circumstances that would entitle a defendant to do so under this Rule.

In *O'Keefe v. Baltimore Transit Company,* 201 Md. 345, 94 A.2d 26 (1953), we considered whether Section III of the General Rules of Practice and Procedure, which was titled "Joinder of Parties and Claims; Third Party Practice" and included the precursor to Rule 2–332,[15] barred a separate action for contribution. Following a collision between a taxicab and a streetcar in Baltimore City, the widows of the taxicab passengers brought wrongful death actions against both Arthur O'Keefe, the owner of the taxicab, and the streetcar company, Baltimore Transit Company. Baltimore

---

**15.** In *Hashmi v. Bennett,* 416 Md. 707, 7 A.3d 1059 (2010), we recently outlined the history of Rule 2–332:

In 1947, the Court of Appeals adopted "General Rules of Practice and Procedure," including Rule 4 of Section III entitled "Joinder of Parties and Claims," Maryland Code (1947 Supp.), which relevantly provided:

(a) *Motion by Defendant.* Where the defendant in any action claims that a person not a party to the action is or may be liable to him for all or part of the plaintiff's claim against him, he may move for leave to serve a summons and claim upon such person as a third party. . . .

Former Rule 4 was codified in 1956 as Rule 315 of the Maryland Rules, the precursor to present Rule 2–332, governing third-party practice.

416 Md. 707, 727 n. 17, 7 A.3d 1059, 1071 n. 17.

Transit Company entered into general releases with the plaintiffs, releasing both itself and the taxi cab company from liability. Thereafter, in a separate action, Baltimore Transit Company pursued contribution against Mr. O'Keefe for one half, or its pro rata share, of the settlement amount. In that separate action, the trial court found "that the accident was due to the joint negligence of the operator of the streetcar of the Baltimore Transit Company and the driver of the cab of the appellant [Mr. O'Keefe]" and awarded the Baltimore Transit Company contribution. *Id.* at 359, 94 A.2d at 32.

Before us, Mr. O'Keefe argued that the Baltimore Transit Company could not secure a settlement in a pending case and then pursue contribution in a separate action. Looking to Section III, we concluded that Baltimore Transit Company's separate action for contribution was permitted, because "[t]here is no requirement in these rules that an action for contribution must be brought in the original action and cannot be brought in an independent action." *Id.* at 351, 94 A.2d at 28.[16]

Mercy argues, nevertheless, that allowing Dr. Julian to proceed in a separate action for contribution would thwart the Act's purpose of "try[ing] in one action all phases of litigation among the original and impleaded parties," *Montgomery County v. Valk Mfg. Co.*, 317 Md. 185, 191, 562 A.2d 1246, 1249 (1989), quoting *Stem v. Nello L. Teer Co.*, 213 Md. 132, 144, 130 A.2d 769, 775 (1957). The Act, however, was designed to subvert the common law's notion that the joint tort-feasor,

---

**16.** Paul Mark Sandler and James K. Archibald have reiterated in Pleading Causes of Action § 15.5, at 830 (4th ed. 2008) that "[t]he right to contribution may be enforced in a variety of ways," including a separate action:

The right to contribution may be enforced in a variety of ways. Ordinarily, contribution between or among defendants will be enforced by means of a cross-claim in the same case in which their common liability is established. *Maloney Concrete Co. v. D.C. Transit Sys.*, 241 Md. 420, 216 A.2d 895 (1966); *O'Keefe v. Balt. Transit Co.*, 201 Md. 345, 94 A.2d 26 (1953); *Gaither v. Bauernschmidt*, 108 Md. 1, 69 A. 425 (1908). However, it can be enforced ... in a separate action after judgment is made.

against whom judgment was solely collected, was thought to be "bad man" and not entitled to pursue a fair distribution of liability among multiple culpable actors. Charles O. Gregory, *Contribution Among Joint Tortfeasors: A Defense,* 54 Harv. L.Rev. 1170, 1170 (1941). Clearly, the Act, as well as the Rules pertaining to the pursuit of contribution, do not mandate the filing of a cross-claim.[17]

The possibility of joinder in one action, though facially appealing for the court and some of the parties, may not be appealing to the nonsettling defendant. Dr. Julian argues that his pursuit of contribution in a separate action was a matter of trial strategy, because if he had filed a cross-claim against Mercy, the Spences would have presented evidence as to his liability solely, leaving the jury confused and persuaded that Mercy was not liable: "The real parties in interest are the plaintiff and the non-settling tortfeasor, but the jury will never know this because it cannot be told of the settlement due to the same risk of jury confusion."

The Spences separately argue, however, that Dr. Julian waived his right to pursue contribution against Mercy in a separate action, because he failed to plead "release" as an affirmative defense, pursuant to Rule 2–323(g)(12),[18] in the

---

**17.** Having determined that the Release entered into by Mercy and the Spences does not bar Dr. Julian from asserting a claim against Mercy for contribution in a separate action, Mercy's third question presented asks whether Dr. Julian, if successful in this separate contribution action, is limited in recovery to a reduction in the judgment rendered to the Spences. Obviously, by this question, Mercy seeks to have us render an advisory opinion, as Dr. Julian's separate action has not proceeded beyond the pleadings. *See Toland v. Futagi,* 425 Md. 365, 390, 40 A.3d 1051, 1066 (2012) (explaining that it is "a long forbidden practice in this State" for the Court to issue an advisory opinion on a issue that is not ripe, which is defined as "a matter in the future, contingent and uncertain," quoting *Hickory Point Partnership v. Anne Arundel County,* 316 Md. 118, 129, 557 A.2d 626, 631 (1989)). We, therefore, decline to address this issue.

**18.** Rule 2–323(g)(12) provides:

original medical malpractice action. They contend that Dr. Julian, as a third party beneficiary to their Release of Mercy, relies "upon the Spence/Mercy release as the basis for [his] contribution claim." How Dr. Julian is a third party beneficiary is truly questionable, even unfathomable, because he derives his right to contribution by statute, not as a result of a release that purports to extinguish that right.[19]

Accordingly, Dr. Julian was not obligated to file an amended Answer in the original action to include release as an affirmative defense, prior to pursuing a contribution action against Mercy.

**JUDGMENTS OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONERS.**

BELL, C.J., HARRELL, and McDONALD, JJ., concur and dissent.

McDONALD, J., concurring and dissenting, in which BELL, C.J., and HARRELL, J., join.

These consolidated cases arise out of conflicting rulings by two judges of the same circuit court in separate parts of what is essentially the same litigation—a head-on collision of sorts. It was up to the Court of Special Appeals—and now us—to

---

(g) **Affirmative Defenses.**—Whether proceeding under section (c) or section (d) of this Rule, a party shall set forth by separate defenses:

\*     \*     \*

(12) release[.]

**19.** The Spences also cite several cases involving a release to which a defendant is either a signatory, *Bowser v. Resh,* 170 Md.App. 614, 907 A.2d 910 (2006), or is not a signatory but benefits from a general release of its liability, *Harold v. Cendo,* 1997 WL 734028, 1997 U.S.App. LEXIS 33594 (4th Cir.1997) (interpreting Virginia law), *Taggart v. United States,* 880 F.2d 867 (6th Cir.1989) (concluding that a defendant may argue, in a motion for summary judgment, that the injured party's claim against it is barred by a general release to which it was not a party), both of which are inapposite to the instant case.

sort out who had the right of way and, more importantly, the rules of the road for similar cases in the future.

The majority opinion does a fine job of laying out the background of this case, tracing the history of the law of contribution, describing the Maryland Uniform Contribution Among Joint Tort–Feasors Act ("UCATA"), and outlining the leading cases. It rules in favor of one side, but shies away from making the key choice that this case presents. I would be disposed to join what is a well constructed opinion, except that I cannot tell what decision we have made as to this question: What is the effect, as to a post-judgment action for contribution, of a release that provides for a pro rata reduction of the common liability for allegedly culpable parties conditioned on a subsequent determination of the joint tort-feasor status of the settling party?

At the risk of repeating what has already been well laid out, I begin by briefly summarizing my understanding of UCATA and the Court's holding in what all parties agree is the key precedent—*Swigert v. Welk.*[1]

## UCATA

Simply put, UCATA establishes a right of contribution among parties who are jointly and severally liable under Maryland tort law. Maryland Code, Courts & Judicial Proceedings Article ("CJ"), § 3–1402. A joint tort-feasor who pays more than a pro rata share of the common liability may collect contribution from the other joint tort-feasors. CJ § 3–1402(b).

UCATA also establishes rules for the assessment of contribution when one or more of the allegedly culpable parties settle with the plaintiff. A settling joint tort-feasor is not entitled to contribution from another joint tort-feasor unless the settlement extinguishes the liability of the other tort-feasor. CJ § 3–1402(c). A release given by a plaintiff to a settling joint tort-feasor reduces the plaintiff's claim against the other joint tort-feasors by the amount of the settlement—

---

1. 213 Md. 613, 133 A.2d 428 (1957).

or by a greater amount or proportion set forth in the release. CJ § 3–1404. Finally, the settling joint tort-feasor remains liable to pay contribution to other joint tortfeasors for their payment of the common liability unless the release provided by the plaintiff provides for a reduction of the common liability to the extent of the pro rata share of the settling joint tort-feasor. CJ § 3–1405(2).[2] UCATA thus allows a defendant in a tort action to settle its liability with the plaintiff in a way that eliminates any future obligation of the defendant to make contribution to other defendants who choose to litigate liability.

This seems straightforward enough. But, virtually by definition, settlements occur before liability is adjudicated. Whether a settling party is in fact a joint tort-feasor may be unclear and UCATA's rules on contribution require further explication, as exemplified in the *Swigert* case.

*Swigert*

In *Swigert,* this Court held that the release given by the Plaintiff (Newport) to the Released Defendant (Welk) would not be effective to reduce the Litigating Defendant's (Swigert's) liability pursuant to the pro rata reduction under UCATA (now codified in CJ § 3–1405) until the Released Defendant (Welk) was adjudicated a tort-feasor.[3]

---

**2.** The release must also be given before the right of the other joint tort-feasor to obtain a money judgment for contribution arises—*i.e.*, before the joint tort-feasor seeking contribution has paid the common liability, or at least more than the payor's pro rata share. CJ § 3–1405(1); CJ § 3–1402(b).

**3.** To keep the positions of the various players under UCATA in focus, for the remainder of this opinion I will use the term Released Defendant to identify the allegedly culpable party that enters into a settlement with the Plaintiff and obtains a release that purports to protect that party from liability under UCATA for contribution to other joint tortfeasors. Under this definition, a Released Defendant, of course, may or may not ever formally be a defendant in the litigation and may or may not ultimately be determined to be a joint tort-feasor.

I will use the term Litigating Defendant to denote an allegedly culpable party that does not enter into a settlement or obtain a release from the Plaintiff.

If the Released Defendant in *Swigert* was subsequently adjudicated a tort-feasor, the Litigating Defendant's liability would accordingly be reduced pro rata under UCATA; the Released Defendant would owe nothing more to the Plaintiff (the settlement had resolved that) or to the Litigating Defendant in contribution (per CJ § 3–1405).

If the Released Defendant was adjudicated not to be a joint tort-feasor, the Released Defendant would be a "volunteer", the Litigating Defendant's liability would not be reduced as a result of Released Defendant's settlement, and the Released Defendant would owe nothing more to either Plaintiff (again, the settlement had resolved that question) or the Litigating Defendant (contribution under UCATA may only be obtained from joint tortfeasors—CJ § 3–1402).

In either case, there would be no further recovery against the Released Defendant. The party at risk in the subsequent adjudication was the Plaintiff. If the Released Defendant was determined to be a joint tort-feasor, any judgment the Plaintiff obtained against the Litigating Defendant would be reduced; if the Released Defendant was not a joint tort-feasor, there would be no reduction.[4]

---

**4.** Maryland adopted the 1939 version of UCATA, as did seven other states. Chapter 344, Laws of Maryland 1941. It is notable that, in 1955, the Uniform Laws Commissioners withdrew the 1939 version of the model law and substituted a revised version. In doing so, the commissioners noted that § 5 of the 1939 UCATA, which is the basis for CJ § 3–1405, "has been one of the chief causes of complaint where [1939 UCATA] has been adopted, and one of the main objections to its adoption." 12 Uniform Laws Annotated, 1955 UCATA, § 4, *comment* at p. 285. The commissioners substituted a new section that combined old § 4—the basis for CJ § 3–1404—and § 5 of 1939 UCATA into one section and eliminated the requirement that a release provide for a *pro rata* reduction in any judgment in order to extinguish a Released Defendant's liability for contribution. No state has adopted the 1939 version of UCATA for more than 60 years. As a result, there is a relatively little law from other jurisdictions interpreting § 5 of the 1939 version of UCATA. In *Swigert*, Maryland, like two other states, followed the approach of a Pennsylvania decision that required an adjudication or admission of the Released Defendant's tort-feasor status, at least for purposes of reducing a judgment pursuant to § 4 of 1939 UCATA. *Davis v. Miller*, 385 Pa. 348, 123 A.2d 422 (1956); *see also Scalf v.*

*The Majority Opinion in the Present Case*

In the present case, our opinion concludes that the contribution action may proceed, but is at best ambiguous on the consequences of that decision. Our opinion raises, but does not answer, the following questions: Does it matter, for purposes of CJ § 3–1405, whether a Released Defendant is determined to be a joint tort-feasor in a separate contribution action as opposed to the main action? Are we limiting or perhaps even overruling *Swigert*?

Our opinion notes, correctly I think, that a contribution claim may be brought in the original action or as a separate action. Op. at pp. 374–78, 56 A.3d at 162–65. But what does this mean with respect to a Released Defendant? [5] Does it matter whether the Released Defendant is adjudicated a joint tort-feasor in the original action or in a separate action for the release to absolve the Released Defendant of liability for contribution?

In both this case and in *Swigert*, the determination of the Released Defendant's status as a joint tort-feasor would occur only subsequent to the execution of the release. In *Swigert*, the subsequent adjudication of the Released Defendant's (Welk's) status as a joint tort-feasor would occur at some point

---

*Payne*, 266 Ark. 231, 583 S.W.2d 51 (1979); *Medical Center of Delaware v. Mullins*, 637 A.2d 6 (Del.1994).

**5.** Two federal courts, in applying Maryland law and dismissing or granting summary judgment with respect to claims for contribution, have concluded that execution of a *Swigert* release absolves the Released Defendant of liability for contribution. *Adams v. NVR Homes, Inc.*, 135 F.Supp.2d 675, 708–11 (D.Md.2001) (granting summary judgment to released defendants as to cross-claim for contribution on ground that right of contribution against alleged joint tort-feasors had been "extinguished" as a result of *Swigert* release prior to any adjudication of the released party's tort-feasor status); *Montgomery County v. Jaffe, Raitt, Heuer & Weiss, P.C.*, 897 F.Supp. 233, 239 (D.Md.1995) (holding that "the statutory terms imposing a bar against contribution" had been met in a *Swigert* release and that, as a result, a litigating defendant had "no right of contribution" against the settling defendants and therefore could not implead them—again before adjudication of tort-feasor status). The majority opinion acknowledges that the two federal cases accurately quote CJ § 3–1405, but does not attempt to distinguish them, although those cases each reach a conclusion quite different from the majority opinion.

in the main action as the Released Defendant had been impleaded by the Litigating Defendant (Swigert) as a third party defendant. Under our holding in this case, that determination will take place in a separate contribution action by the Litigating Defendant (Julian) against the Released Defendant (Mercy).[6]

In our opinion in the present case, we say that a Plaintiff *and* a Released Defendant take a "risk" in having the liability of the Released Defendant adjudicated—presumably an adjudication that happens after execution of the release, or it would not be a "risk." Op. at p. 369, 56 A.3d at 159–60. But is the Released Defendant, as well as the Plaintiff, taking a "risk" in that adjudication? The same passage in our opinion suggests not—after analyzing the outcomes if the Released Defendant is adjudicated liable or not liable, at the conclusion of the same paragraph we say that the Released Defendant is not subject to recovery by either the Plaintiff or Litigating Defendants "in both scenarios." *Id.* Thus, it seems that we are saying that only the Plaintiff is taking a risk in submitting the Released Defendant's tort-feasor status to adjudication— presumably the risk that the Released Defendant will be adjudged a tort-feasor under UCATA, thus reducing the Plaintiff's recovery against the Litigating Defendant.

This analysis suggests that a Released Defendant in the position of Mercy in this case faces no additional liability from the adjudication of its tort-feasor status, whether that adjudication takes place in the context of a third-party or cross claim in the main action (as in *Swigert* ) or as a claim for contribution in a separate action (as in the present case).[7] On the

---

**6.** A primary issue in a contribution action involving a Released Defendant presumably is whether the Released Defendant is in fact a joint tort-feasor. If not, the Released Defendant cannot be liable for contribution.

**7.** Under that analysis, the release in the present case is similar to the release in *Swigert* in that it does not acknowledge the Released Defendant's status as a tort-feasor, but allows for a pro rata reduction if that determination is made in the future. Here, if Mercy (the Released Defendant) is subsequently adjudicated a tort-feasor in the contribution

other hand, we could decide to limit the *Swigert* approach to cases in which the post-release adjudication of tort-feasor status occurs in the litigation of a third-party claim for contribution rather than a separate action for contribution. That in fact was one of the questions on which we granted certiorari.[8] But our opinion now declines to answer it (other than implicitly in the paragraph described above).[9]

*The Need to Make a Choice*

In urging us to choose one rule over the other the parties have conjured competing pictures of adverse consequences. Mercy projects that a ruling that Julian may recover money damages from it in the contribution action will encourage piecemeal litigation and undermine what it characterizes as UCATA's goals of encouraging settlements and judicial efficiency. Julian counters that, if the determination whether the Released Defendant is in fact a joint tort-feasor must take place in the main action, it would inevitably distort the truth-

---

action, the release becomes effective to reduce Julian's (the Litigating Defendant's) liability pro rata and Mercy should owe nothing more. If Mercy is found not to be a joint tort-feasor, it is a "volunteer", Julian owes the judgment, and Mercy still owes nothing more to either plaintiffs or Julian.

8. We granted Mercy's petition for certiorari, which included the following question:

> If a joint tort-feasor may pursue a post-judgment action for contribution against a party released by a "Swigert" *pro rata* release, may he recover money damages from the "Swigert" defendant, or is the remedy limited to a reduction of the judgment?

424 Md. 628, 37 A.3d 317 (2012). This is essentially the question whether a post-release adjudication of the Released Defendant's joint tort-feasor status in a contribution action has the same effect as a post-release adjudication of that status in a third party claim or cross claim—the *Swigert* situation.

9. Our reason for declining to address this question explicitly is that it calls for an advisory opinion. Op. at p. 379 n. 17, 56 A.3d at 165 n. 17. Yet we can provide an answer that is no more advisory than this Court's holding in *Swigert* that the release in that case would result in a reduction of a future judgment for the Plaintiff if the Released Defendant were later determined to be a joint tort-feasor. *Swigert*, 213 Md. at 619, 133 A.2d 428. Moreover, for the reasons explained in the text, it appears to be the key question posed by these consolidated cases.

finding process and confuse the jury: the Plaintiff would have no incentive to prove the culpability of the Released Defendant while the Litigating Defendant would be placed in the untenable position of simultaneously defending its own conduct while also seeking to prove the culpability of the Released Defendant.[10]

No doubt the parties to medical malpractice and other tort litigation will accommodate their practices to whatever rule we ultimately adopt for the effect of particular types of releases under UCATA. It is important, nonetheless, that we make whatever rule we adopt clear so that they may make that accommodation.

It is sometimes not so important what rule is adopted as that some rule is clearly adopted. For example, there is no moral imperative that directs the choice between requiring drivers to stay to the right side of the road or to stay to the left. But the choice must be clearly made. If not, even the best engineered road will experience head-on collisions.

Chief Judge BELL and Judge HARRELL join in this opinion.

---

**10.** If the choice were left to me, I would opt for judicial economy and trust our trial judges to manage litigation to avoid potentially collusive trials.